Elizabeth L. Deeley (SBN 230798)
elizabeth.deeley@kirkland.com
Austin L. Klar (SBN 292271)
austin.klar@kirkland.com
KIRKLAND & ELLIS LLP
555 California Street
San Francisco, California 94104
Telephone: (415) 439-1400
Facsimile: (415) 439-1500

Attorneys for Defendant,
THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION

| | |
|---|---|
| LARRY GRILL, JOAN GRILL, and STEVEN E. GRILL, in his capacity as Trustee of the Grill Irrevocable Trust 2004, dated September 2, 2004, on behalf of themselves and all others similarly situated,<br><br>   Plaintiffs,<br><br>  v.<br><br>LINCOLN NATIONAL LIFE INSURANCE COMPANY,<br><br>   Defendant. | CASE NO. ED-CV14-00051-JGB (SPx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE INITIAL COMPLAINT**<br><br>Judge:   Hon. Jesus G. Bernal<br><br>Hearing Date: April 21, 2014<br>Time:   9:00 A.M.<br>Courtroom: 3470 Twelfth Street<br>    Courtroom 1<br>    Riverside, CA 92501 |

# TABLE OF CONTENTS

**Page**

I.   PLAINTIFFS LARRY AND JOAN GRILL LACK STANDING
     BECAUSE THEY DO NOT ALLEGE INJURY-IN-FACT ..............................5

II.  PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF
     WHICH WOULD NOT REDRESS ANY FUTURE HARM TO THEM..........7

III. PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD..............................10

     A.   Plaintiffs Fail to State a Common-Law Fraud Claim Because They
          Have Not Established a Duty to Disclose ...............................................10

     B.   Plaintiffs Fail to State a Common-Law Fraud Claim Because They
          Have Not Pleaded Facts Sufficient to Establish That Lincoln
          Concealed the Availability of Life Settlements .......................................14

     C.   Plaintiffs Fail to State a Common-Law Fraud Claim Because They
          Have Not Established Reliance .................................................................17

IV.  PLAINTIFFS FAIL TO STATE A CLAIM FOR FINANCIAL ABUSE
     OF AN ELDER ...............................................................................................18

V.   PLAINTIFFS FAIL TO STATE A CLAIM UNDER CALIFORNIA'S
     UNFAIR COMPETITION LAW ......................................................................20

VI.  PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE
     ALL OF THEIR CLAIMS ARE TIME-BARRED ...........................................24

i

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN
NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE INITIAL COMPLAINT

## **TABLE OF AUTHORITIES**

**Cases**

*Abarca v. Franklin Cnty. Water Dist.*,
   1:07-CV-0388OWWDLB, 2009 WL 1393508 (E.D. Cal. May 18, 2009) ..............11

*Albano v. Shea Homes Ltd. P'ship*,
   634 F.3d 524 (9th Cir. 2011) ....................................24

*Aryeh v. Canon Bus. Solutions, Inc.*,
   55 Cal. 4th 1185, 151 Cal. Rptr. 3d 827 (2013) ....................................25

*Ashcroft v. Iqbal*,
   556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ......................5, 13, 14, 15

*Baba v. Hewlett-Packard Co.*,
   C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. 2010) ..............................22

*Balisteri v. Pacifica Police Dep't*,
   901 F.2d 696 (9th Cir. 1990) ....................................5

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (1955) ...........................5, 18, 19

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*,
   162 Cal. App. 4th 858, 76 Cal. Rptr. 3d 325 (2008) ........................................*passim*

*Cabral v. Supple, LLC*,
   EDCV 12-00085-MWF, 2012 WL 4343867 (C.D. Cal. Sept. 19, 2012)....................9

*Campion v. Old Republic Home Protection Co., Inc.*,
   861 F. Supp. 2d 1139 (S.D. Cal. 2012) ....................................7

*Castagnola v. Hewlett-Packard Co.*,
   C 11-05772 JSW, 2012 WL 2159385 (N.D. Cal. June 13, 2012)..............................8

*Cattie v. Wal-Mart Stores, Inc.*,
   504 F. Supp. 2d 939 (S.D. Cal. 2007) ....................................9

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
   20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999) ....................................20, 21

*City of Los Angeles v. Lyons*,
   461 U.S. 95, 103 S. Ct. 1160, 75 L. Ed. 2d 675 (1983) ..............................7

*Das v. Bank of Am., N.A.*,
   186 Cal. App. 4th 727, 112 Cal. Rptr. 3d 439 (2010) ........................18, 19

*Daugherty v. Am. Honda Motor Co., Inc.*,
   144 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118 (2006) ....................................20

*Davis v. Ford Motor Credit Co.*,
   179 Cal. App. 4th 581, 101 Cal. Rptr. 3d 697 (2009) ..............................21

*Dent v. Cox Commc'ns Las Vegas, Inc.*,
   502 F.3d 1141 (9th Cir. 2007) ....................................16

*Elias v. Hewlett-Packard Co.*,
   12-CV-000421-LHK, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014)....................13, 21

*Fox v. Ethicon Endo-Surgery, Inc.*,
   35 Cal. 4th 797, 27 Cal. Rptr. 3d 661 (2005) ....................................25

ii

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN
NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE INITIAL COMPLAINT

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990) .........................5

*Gibson v. Gov't Emp. Ins. Co.*,
  162 Cal. App. 3d 441, 208 Cal. Rptr. 511 (1984) ....................................12

*Gibson v. U.S.*,
  781 F.2d 1334 (9th Cir. 1986) .................................................................14

*Giordano v. Wachovia Mortg., FSB*,
  5:10-CV-04661-JF, 2011 WL 1130523 (N.D. Cal. Mar. 25, 2011).........25

*Gonzales v. Cal. Dep't of Corr.*,
  739 F.3d 1226 (9th Cir. 2014) ...................................................................6

*Henderson v. Gruma Corp.*,
  CV 10-04173 AHM AJWX, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ............9

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ...................................................................9

*In re All Terrain Vehicle Litig.*,
  978 F.2d 1265 (9th Cir. 1992) .................................................................14

*In re Intel Laptop Battery Litig.*,
  C 09-02889 JW, 2011 WL 7290487 (N.D. Cal. Apr. 7, 2011) ..................8

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) .....................................................23

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales
  Practices, and Products Liability Litig.*,
  826 F. Supp. 2d 1180 (C.D. Cal. 2011) ...................................................11

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) ..............................................16, 17

*Jablon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ...................................................................24

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29 (2003) .......................................23

*Kovich v. Paseo Del Mar Homeowners' Assoc.*,
  41 Cal. App. 4th 863, 48 Cal. Rptr. 2d 758 (1996) .................................11

*Laster v. T-Mobile USA, Inc.*,
  05CV1167, 2009 WL 4842801 (S.D. Cal. Dec. 14, 2009), *vacated in
  part on other grounds,* 466 F. App'x 613 (9th Cir. 2012) .........................9

*Lesley v. Ocwen Fin. Corp.*,
  SA CV 12-1737-DOC, 2013 WL 990668 (C.D. Cal. Mar. 13, 2013)...........21, 22

*Levine v. Blue Shield of Cal.*,
  189 Cal. App. 4th 1117, 117 Cal. Rptr. 3d 262 (2010) .......................11, 12

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115, 61 Cal. Rptr. 3d 221 (2007) ...........................12, 13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ......................6, 7

*Mayfield v. U.S.*,
  599 F.3d 964 (9th Cir. 2010) .....................................................................7

iii

*Parrino v. FHP, Inc.*,
  146 F.3d 699 (9th Cir. 1998), *superseded by statute on other grounds
  as recognized in Abrego Abrego v. the Dow Chem. Co.*,
  443 F.3d 676 (9th Cir. 2006) ...................................................................... 16, 17

*Pastoria v. Nationwide Ins.*,
  112 Cal. App. 4th 1490, 6 Cal. Rptr. 3d 148 (2003) ................................. 13

*Prata v. Sup. Ct.*,
  91 Cal. App. 4th 1128, 111 Cal. Rptr. 2d 296 (2001) (citing *Chern v.
  Bank of Am.*, 15 Cal. 3d 866, 127 Cal. Rptr. 110 (1976)) ......................... 20

*Rikos v. Procter & Gamble Co.*,
  782 F. Supp. 2d 522 (S.D. Ohio 2011) ....................................................... 9

*Rubio v. Capital One Bank*,
  613 F.3d 1195 (9th Cir. 2010) ................................................................... 21

*Shively v. Bozanich*,
  31 Cal. 4th 1230, 7 Cal. Rptr. 3d 576 (2003) ........................................... 24

*Somers v. Apple, Inc.*,
  729 F.3d 953 (9th Cir. 2013) ....................................................................... 5

*Vega v. Jones, Day, Reavis & Pogue*,
  121 Cal. App. 4th 282, 17 Cal. Rptr. 3d 26 (2004) .................................. 25

*Vu v. Prudential Prop. & Cas. Ins. Co.*,
  26 Cal. 4th 1142, 113 Cal. Rptr. 2d 70 (2001) ......................................... 11

*Warren v. Fox Family Worldwide, Inc.*,
  328 F.3d 1136 (9th Cir. 2003) ................................................................. 4, 5

*White v. Trans Union, LLC*,
  462 F. Supp. 2d 1079 (C.D. Cal. 2006) ..................................................... 23

**Rules**

Fed. R. Civ. P 9(b) ...................................................................... 11, 13, 14

Fed. R. Civ. P. 12(b)(1) ....................................................................... 4, 5

Fed. R. Civ. P. 12(b)(6) ..................................................................... 19, 23

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 1 ...................................................................... 6

**California Codes**

Cal. Bus. & Prof. Code § 17200 ............................................................... 20

Cal. Bus. & Prof. Code § 17208 ............................................................... 24

Cal. Civ. Proc. Code § 338(d) .................................................................. 24

Cal. Ins. Code § 10113.2(j) (2010) .......................................................... 14

Cal. Welf. & Inst. Code § 15610.27 ......................................................... 18

Cal. Welf. & Inst. Code § 15610.30 ..................................................... 18, 19

Cal. Welf. & Inst. Code § 15657.6 ........................................................... 19

iv

1

Cal. Welf. & Inst. Code § 15657.7 ............................................................................. 24

2

**Senate Bills**

3

Sen. Bill No. 1140, Senate Judiciary Committee Bill Analysis (2007-2008 Reg. Sess.)
   (Mar. 25, 2008) ........................................................................................................ 19

Sen. Bill No. 1224 (2007-2008 Reg. Sess.) § 10 ........................................................ 14

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN
NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE INITIAL COMPLAINT

### <u>INTRODUCTION</u>

This lawsuit should be dismissed because it is an effort to impose upon insurers a life settlement disclosure obligation that California law (common or statutory) does not require and that the California legislature has considered and rejected. Because the law imposes no such obligation, Plaintiffs have not alleged and cannot allege that Defendant The Lincoln National Life Insurance Company ("Defendant" or "Lincoln") had a duty to inform Plaintiffs that "they [could] sell all or part of their policy to a third party for more than its cash surrender value (*i.e.*, a life settlement)," Compl. ¶ 1, as required to state a claim for fraudulent concealment–Plaintiffs' fundamental claim. In any event, far from concealing life settlements, the Lincoln Life Policy Change Form ("Change Form") which Plaintiffs signed to surrender part of their policy (the "Policy") ***explicitly asks about*** "the possible sale or assignment of this policy to a life settlement, viatical or other secondary market provider." The Change Form is properly considered at the motion-to-dismiss stage because it is central to the partial surrender of the Policy upon which Plaintiffs base their claims. For these reasons alone, the Complaint must be dismissed in its entirety. But the Complaint has additional jurisdictional and procedural defects described below that require dismissal with prejudice.

***First***, Plaintiffs Larry and Joan Grill lack standing and their claims must be dismissed because they have not established any injury-in-fact. The Complaint makes clear that the sole owner and sole beneficiary of the Policy is Steven Grill; Larry and Joan Grill are simply the insureds. As neither the owners nor the beneficiaries of the Policy, they have not alleged that they suffered any concrete harm as a result of the alleged conduct. Any harm associated with a reduction in the face amount of the Policy would affect only the beneficiary, and any harm associated with a missed opportunity to sell the Policy would affect only the owner. Because Plaintiffs Larry and Joan Grill have not established any injury-in-fact, their claims, including the

entirety of Count II, which was brought only by these two Plaintiffs, must be dismissed.

**Second**, all three Plaintiffs lack standing to seek injunctive relief. Their claims for such relief must be dismissed because they have not established any imminent future harm that could be redressed through an injunction. Allegations of past wrongs do not support standing for injunctive relief, nor do allegations of future harm to third parties (such as members of a proposed class). What Plaintiffs must show—but have not shown, and cannot show—is that they are likely to suffer future harm absent an injunction. Since it is clear that Plaintiffs are currently aware of life settlements, they do not have standing to seek an injunction that would compel Lincoln to tell them about life settlements.

**Third**, Plaintiffs fail to state a claim for fraudulent concealment because they have not alleged sufficient facts to support the essential elements of duty, concealment and reliance. They have not alleged facts establishing that Lincoln had a duty to disclose that they could sell their Policies through a life settlement. Under California law, an insurer is not a fiduciary to the insured and any special duties owed to the insurer arise in the context of coverage and claim processing not at issue here. Plaintiffs have alleged no facts that would give rise to a duty to disclose. Plaintiffs also have failed to support their assertion that Lincoln "actively concealed" the life settlement option with sufficient factual support. Their allegations are particularly wanting in light of the Change Form Plaintiffs signed to partially surrender the Policy, which **explicitly asks about** the life settlement option and which is properly considered on a motion to dismiss because Plaintiffs' claims necessarily rely on it. And Plaintiffs have failed to allege that they would (or could) have sold their Policy to a third party through a life settlement (for greater than its cash value) in lieu of surrendering part of it had they known about life settlements.

**Fourth**, Plaintiffs fail to state a claim for elder abuse because they do not allege that Lincoln wrongly took or retained any property, let alone property belonging to

2

Larry or Joan Grill. The harms Plaintiffs allege involve a change in death benefit payments that would affect the beneficiary or Policy changes impacting the Policy owner—in both cases, Steven Grill—not the insureds. Steven Grill did not bring the elder abuse claim, and Plaintiffs have not alleged that he is an elder.

***Fifth,*** Plaintiffs fail to state a claim under California's Unfair Competition Law ("UCL") because they failed to allege facts showing that Lincoln's conduct was unlawful, unfair, or fraudulent. Their unlawful and fraudulent allegations rely entirely on the other two claims (elder abuse and fraudulent concealment, respectively) and therefore fail together with those claims. And while California courts apply three different tests to determine whether a business practice is "unfair," Plaintiffs' claim meets none of them. Moreover, Plaintiffs cannot obtain the only type of monetary relief available under that law—restitution—because they cannot show that Lincoln took any property from them when they partially surrendered the Policy, and their UCL claim fails for this reason as well.

***Sixth***, all of Plaintiffs' claims are time-barred. The claims are subject to limitations periods of three years (fraud) or four years (elder abuse and UCL), and yet Plaintiffs filed suit more than four years after the second time they surrendered part of the Policy, which is when their claims accrued. Plaintiffs also cannot rely on the discovery rule because they have not alleged—as they must—when and how they discovered their alleged claims and that a reasonable investigation before the limitations period ran would not have revealed them.

## **FACTUAL BACKGROUND**

Plaintiffs purchased a $7.2 million life insurance policy from Lincoln on November 11, 2004. Compl. ¶¶ 17, 19. The owner and beneficiary of the Policy was Steven E. Grill, Trustee of the Grill Irrevocable Trust. Compl. ¶ 17. Larry and Joan Grill were the insureds, meaning that the death benefit under the Policy was payable upon their deaths. Compl. ¶¶ 17-18. Specifically, because the Policy is a "second to

die" policy, the Policy requires payment of the death benefit only after both insureds have died. Compl. ¶ 18.

Plaintiffs allege that, in 2008, the investment returns on the Policy became insufficient to cover the Policy's cost of insurance. Compl. ¶ 19. Plaintiffs inquired "about retaining or modifying the Policy[,]" and their agent told them that they could "pay new premiums into the Policy to extend it" or "surrender the Policy, in whole or in part, to reduce the cost of insurance." *Id.* ¶¶ 2, 19. Plaintiff Stephen Grill partially surrendered the Policy in February 2008 by submitting the Change Form that reduced the Policy's face amount to just over $5 million. Compl. ¶ 21; *see also* Declaration of Austin L. Klar in Support of Defendant's Motion to Dismiss the Initial Complaint ("Klar Declaration") ¶ 3, Ex. A. He reduced the face amount further to $2 million in 2009. Compl. ¶ 22.

Plaintiffs allege that neither Lincoln nor their insurance agent advised them that they could "sell[] all or part of the Policy to a third party in a life settlement." Compl. ¶ 20. They claim that this alleged failure to disclose constituted common-law fraud, *see* Compl. ¶¶ 41-48, financial abuse of an elder under the California Elder Abuse Act, *see* Compl. ¶¶ 49-57, and an unlawful, unfair, and fraudulent business practice under the California Unfair Competition Law, *see* Compl. ¶¶ 58-65. Plaintiffs seek class certification, money damages, restitution, injunctive relief, and costs and fees. *See* Compl., Prayer for Relief.

## **LEGAL STANDARD**

A court must dismiss a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure ("Rule") 12(b)(1) when a plaintiff lacks standing to pursue it. *See, e.g.*, *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003). Plaintiffs bear the burden to "allege[] facts essential to show jurisdiction," and "[i]f they fail to make the necessary allegations, they have no standing" and the action must be dismissed. *FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S.

4

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN
NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE INITIAL COMPLAINT

Ct. 596, 608, 107 L. Ed. 2d 603 (1990) (internal quotation marks and alterations omitted).

A court may also dismiss claims under Rule 12(b)(6) based on "the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). To state a claim, a plaintiff must plead facts sufficient "to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973, 167 L. Ed. 2d 929 (1955)). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. Nor do "naked assertions devoid of further factual enhancement." *Id*. (internal alterations and quotation marks omitted). The court must "draw on its judicial experience and common sense," and if the facts alleged "do not permit the court to infer more than the mere possibility of misconduct," the claim must be dismissed. *Id*. at 1950. In short, a plaintiff may not just "'plead[] facts that are merely consistent with a defendant's liability.'" *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Rather, the allegations must "rise above the mere conceivability or possibility of unlawful conduct" and "be 'factually suggestive'" of actual wrongdoing. *Id*.

## **ARGUMENT**

## I.   **PLAINTIFFS LARRY AND JOAN GRILL LACK STANDING BECAUSE THEY DO NOT ALLEGE INJURY-IN-FACT**

Plaintiffs Larry and Joan Grill lack standing because they are neither owners nor beneficiaries of the Policy and thus have not established injury-in-fact. It is well settled that, "if [a plaintiff] lacks standing . . . , the district court [does] not have subject matter jurisdiction and dismissal [i]s appropriate" under Rule 12(b)(1). *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).

5

Moreover, the elements of standing—rooted in Article III's "Case or Controversy" requirement, *see* U.S. CONST. art. III, § 2, cl. 1—"are not mere pleading requirements but rather an indispensable part of the plaintiff's case." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). And it is part of "the irreducible constitutional minimum of standing" that a "plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at 560 (internal quotation marks omitted). Plaintiffs also generally "must assert [their] ***own*** legal rights and interests." *Gonzales v. Cal. Dep't of Corr.*, 739 F.3d 1226, 1234 (9th Cir. 2014) (emphasis added).[1]

Plaintiffs Larry and Joan Grill have not met their burden of establishing injury-in-fact. To the contrary, the Complaint alleges that ***Steven*** Grill "is the owner and beneficiary of the [P]olicy," Compl. ¶ 9, and therefore the one whose interests are potentially at stake. *See also id.* ¶ 17 ("Plaintiffs Larry Grill and Joan Grill were named as the insureds under the Policy"). As neither the owners nor beneficiaries of the Policy, Larry and Joan Grill have failed to establish any injury-in-fact ***suffered by them*** as a result of the alleged concealment of a life settlement option.

The only possible injuries alleged here flow either to the beneficiary or to the owner of the Policy, not to Larry or Joan Grill as the insured. Plaintiffs' primary claim of injury is that, "[a]s a direct and proximate result of Defendant's failure to inform and/or active concealment of the option of a life settlement, Plaintiffs surrendered over $5 million (in other words, gave up over $5 million in coverage) of the Policy for no consideration." Compl. ¶ 5. But reducing the face amount of the Policy—*i.e.*, the amount paid by Lincoln upon death—affects the beneficiary, not the insured. The reduction could not possibly harm Plaintiffs Larry and Joan Grill since the death benefit is payable only after their deaths. Similarly, any alleged harm flowing from the

---

[1] All emphasis added unless stated otherwise.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE INITIAL COMPLAINT

supposedly missed chance to sell the Policy would affect the owner, not the insured. Put simply, Plaintiffs cannot claim injury from the lost opportunity to sell something they did not own in the first place. And nothing else in the Complaint establishes (or could establish) that Plaintiffs Larry and Joan Grill have suffered any injury-in-fact. The claims brought by Plaintiffs Larry and Joan Grill, including the entirety of Count II, which only they have brought, must therefore be dismissed with prejudice.

## II.   PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF WHICH WOULD NOT REDRESS ANY FUTURE HARM TO THEM

All three Plaintiffs also lack standing with respect to their claims for injunctive relief because they cannot establish any imminent future harm from which an injunction would protect them. Another element of "the irreducible constitutional minimum of standing," *Lujan*, 504 U.S. at 560-61, is redressability. That is, "it must be 'likely,' as opposed to merely 'speculative,' that [an actual or imminent injury-in-fact] will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon v. Eastern Ky. Welfare Rights Organization*, 426 U.S. 26, 38, 96 S. Ct. 1917, 1924, 48 L. Ed. 2d 450 (1976)). And as relevant here, "[a] plaintiff seeking . . . injunctive relief must establish that he or she is 'realistically threatened by a repetition of the violation' in order to establish the relief sought would redress the alleged injuries." *Campion v. Old Republic Home Protection Co., Inc.*, 861 F. Supp. 2d 1139, 1147 (S.D. Cal. 2012) (quoting *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006)).

Plaintiffs lack standing to seek injunctive relief because they have not shown, and cannot show, that they are likely to suffer repeat harm in the future. A plaintiff cannot seek injunctive relief based upon "[p]ast exposure to harmful or illegal conduct," *Mayfield v. U.S.*, 599 F.3d 964, 970 (9th Cir. 2010), but must affirmatively establish that he is "likely to suffer ***future*** injury from the [challenged conduct]." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S. Ct. 1160, 1667, 75 L. Ed. 2d 675 (1983). Plaintiffs cannot make that showing here.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE INITIAL COMPLAINT

Plaintiffs in no way allege how they might be harmed in the future by the conduct they challenge: Lincoln's alleged failure "to advise them that they can sell all or part of their [P]olicy to a third party" (*i.e*, a failure to inform them of life settlements). Compl. ¶ 1. Plaintiffs do not allege that they plan to make another adjustment to the Policy in the future. And even if they did, there is no way that they could possibly suffer the same alleged harm ***again*** because, as is obvious from their complaint, they now know about life settlements and acknowledge that information about them is publicly available. *See, e.g.*, Compl. ¶¶ 3, 24-26 (discussing *The New York Times* and other publically available articles and studies about life settlements). Indeed, it is an element of a concealment claim under California law that the plaintiff be "unaware of the fact" not disclosed. *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868, 76 Cal. Rptr. 3d 325, 332 (2008). Plaintiffs could not satisfy that element going forward; the injunction Plaintiffs purport to seek here would essentially require Lincoln to tell Plaintiffs something they already know. That relief would not redress anything, and Plaintiffs therefore lack standing to seek it.

Numerous courts have reached the same result. When plaintiffs sued Intel for allegedly failing to disclose that the battery performance benchmarks they used to market their laptops were created by Intel, the district court held that they lacked standing to seek an injunction because they were asking for disclosure of something they already knew. *See In re Intel Laptop Battery Litig.*, C 09-02889 JW, 2011 WL 7290487 (N.D. Cal. Apr. 7, 2011). The court explained that, "[i]f a plaintiff has knowledge of a defendant's practices, that plaintiff cannot have standing to seek injunctive relief to redress injuries caused by those practices, because the plaintiff's knowledge precludes him from showing a likelihood of being injured in the future by those practices." *Id.* at *2. Many other courts have come to the same conclusion. *See, e.g.*, *Castagnola v. Hewlett-Packard Co.*, C 11-05772 JSW, 2012 WL 2159385, at *6 (N.D. Cal. June 13, 2012) (holding that plaintiffs lacked standing because there was

8

no "realistic threat that they would be harmed by Defendants' conduct in the future" since they "now have knowledge of the [allegedly concealed information]"); *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) ("[I]t is unclear how prospective relief will redress [plaintiff's] injury, since she is now fully aware of the linens' thread count [which the defendant was allegedly misrepresenting]."); *see also Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 532 (S.D. Ohio 2011); *Laster v. T-Mobile USA, Inc.*, 05CV1167, 2009 WL 4842801, at *4 (S.D. Cal. Dec. 14, 2009), *vacated in part on other grounds,* 466 F. App'x 613 (9th Cir. 2012).[2]

That other individuals—even individuals whom Plaintiffs seek to represent in a class action—may not know about life settlements does nothing to change the analysis:

> Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief. Any injury unnamed members of [a] proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek.

*Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). Plaintiffs therefore lack standing to pursue injunctive relief and their claims for such relief must be dismissed.

---

[2] Some courts have held in false advertising cases that a plaintiff who knows about the falsity can still pursue an injunction, *see, e.g.*, *Cabral v. Supple, LLC*, EDCV 12-00085-MWF, 2012 WL 4343867 (C.D. Cal. Sept. 19, 2012); *Henderson v. Gruma Corp.*, CV 10-04173 AHM AJWX, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011), but the considerations driving those decisions are not present here. Plaintiffs do not seek an injunction that would stop Lincoln from making false statements to the public—there is no allegation that Lincoln has done any such thing. Rather, Plaintiffs are asking for an injunction that would require Lincoln to tell them that "they [could] sell all or part of their [P]olicy to a third party," Compl. ¶ 1, which they obviously know already. *See, e.g.*, Compl. ¶¶ 3, 24-26.

9

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE INITIAL COMPLAINT

## III.   PLAINTIFFS FAIL TO STATE A CLAIM FOR FRAUD

Beyond the standing problems with the claims of Larry and Joan Grill and the claims for injunctive relief, Plaintiffs have also failed to state a claim for fraud. Plaintiffs rely on a theory of fraudulent concealment, and they therefore must prove (and at this stage, plead sufficient facts to plausibly establish) five elements:

> (1) the defendant . . . concealed or suppressed a material fact, (2) the defendant [was] under a duty to disclose the fact to the plaintiff, (3) the defendant . . . intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff [was] unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff . . . sustained damage.

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868, 76 Cal. Rptr. 3d 325, 332 (2008). Plaintiffs' allegations fail to establish most of these elements. First, they fail to establish that Lincoln had any duty to disclose to Plaintiffs that they could sell the Policy through a life settlement. Second, even if Lincoln did have such a duty, Plaintiffs fail to plead facts showing that Lincoln intentionally concealed this option, particularly where the Change Form (properly considered at this stage) specifically refers to life settlements. Third, Plaintiffs have failed to plead facts sufficient to show reliance—that is, that they would (or could) have sold their Policy to a third party through a life settlement provider (for greater than its cash value) in lieu of surrendering part of it had they known about life settlements. Their fraud claim must therefore be dismissed.

### A.   Plaintiffs Fail to State a Common-Law Fraud Claim Because They Have Not Established a Duty to Disclose

Plaintiffs' claim that Lincoln committed fraud by failing "to advise them that they can sell all or part of their policy ***to a third party*** . . . (*i.e.,* a life settlement)[,]" Compl. ¶ 2, must be dismissed because they have not established that Lincoln was

10

"under a ***duty to disclose*** the fact to the plaintiff." *Blickman Turkus, LP*, 162 Cal. App. 4th at 868, 76 Cal. Rptr. 3d at 332; *see also In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig.*, 826 F. Supp. 2d 1180, 1205 (C.D. Cal. 2011) ("[F]raud by concealment is actionable only if the defendant had a duty to disclose the concealed fact."). Because this is an element of fraud, Rule 9(b) requires that the circumstances giving rise to the duty to disclose must be "state[d] with particularity." FED. R. CIV. P. 9(b); *see also Abarca v. Franklin Cnty. Water Dist.*, 1:07-CV-0388OWWDLB, 2009 WL 1393508, at *8 (E.D. Cal. May 18, 2009) ("In conjunction with Rule 9(b), Plaintiffs must allege the existence of a duty to disclose with particularity."). Plaintiffs completely fail to carry that burden.

A duty to disclose typically arises where there is a "fiduciary or confidential relationship giving rise to a duty to disclose," *Kovich v. Paseo Del Mar Homeowners' Assoc.*, 41 Cal. App. 4th 863, 866, 48 Cal. Rptr. 2d 758, 760 (1996), but Plaintiffs have not pleaded facts establishing that such a relationship existed here. The California Supreme Court has held that an insurer is ***not*** a fiduciary of its insured. *See Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1150-51, 113 Cal. Rptr. 2d 70, 76 (2001) ("The insurer-insured relationship, however, is not a true 'fiduciary relationship'").

Courts impose heightened duties on an insurer dealing with its insured where the information "relate[s] to ***coverage*** or the ***processing*** of claims." *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1131, 117 Cal. Rptr. 3d 262, 273 (2010). In *Levine*, plaintiffs alleged Blue Shield concealed that their health care premiums would be lower if the Levines restructured their policy by naming a different primary insured and adding minor dependents to a single family plan. The court held that Blue Shield did not owe a duty to disclose that information because "the amount of money that an insurer is willing to accept in exchange for coverage . . . does not relate to coverage or the processing of claims." *Id.*

11

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN
NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE INITIAL COMPLAINT

Similarly, the ability to sell a policy to a third party does not relate to coverage or claims-processing. Lincoln has no duty to inform policyholders of transactions they might be able to conduct with third parties. *See Gibson v. Gov't Emp. Ins. Co.*, 162 Cal. App. 3d 441, 452, 208 Cal. Rptr. 511, 519 (1984) (holding that an insurer had no duty to advise the insured of the availability of coverage elsewhere in the industry). That Plaintiffs have an on-going relationship with Lincoln does not alter Lincoln's disclosure duties. *See Levine*, 189 Cal. App. 4th at 1130-31, 117 Cal. Rptr. 3d at 273 (rejecting the argument that an existing relationship between an insurer and insured creates different disclosure duties). Thus, Lincoln had no duty based on its relationship with Plaintiffs to disclose life settlement options.

Further, while a duty to disclose may also arise from the specific facts when there is a non-fiduciary relationship, *see, e.g.*, *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 132, 61 Cal. Rptr. 3d 221, 234 (2007), Plaintiffs do not allege any conduct by Defendant giving rise to a duty to disclose life settlement options. Plaintiffs generally allege only that they "consulted Defendant's agent to inquire about their options **regarding the Policy**" and that "Defendant, through its agent, represented to Plaintiffs that they had two options: (1) pay new premiums into the Policy to extend it; or (2) surrender the Policy, in whole or in part, to reduce the cost of insurance." Compl. ¶ 19. Defendant allegedly provided "illustrations" to Plaintiffs that "included cost of insurance, fund surrender values, and the death benefit of the then-current Policy and alternatives," Compl. ¶ 20, but Plaintiffs provide no detail concerning specific representations made or information provided by the agent, or whether and how any such agent representations or information were misleading absent disclosure of life settlement options. Plaintiffs allege in conclusory fashion that whatever information was provided to them was "likely to mislead for failing to communicate the facts suppressed or undisclosed." Compl. ¶ 46. But this sort of conclusory allegation—which merely recites the

12

1   elements of a fraud claim—is insufficient to state a claim under Rule 12(b)(6), *see*

2   *Iqbal*, 556 U.S. at 678, let alone with the particularity that Rule 9(b) requires.

3         Plaintiffs also cannot avail themselves of the principle that a duty to disclose

4   may arise where "material facts [are] known or accessible only to defendants." *Linear*

5   *Tech. Corp.*, 152 Cal. App. 4th at 132, 61 Cal. Rptr. 3d at 235. Nothing in the

6   Complaint suggests that only Lincoln could know about life settlements. Indeed,

7   Plaintiffs acknowledge that information about life settlements has been publicized in

8   *The New York Times* and is available online. Compl. ¶¶ 24-26. Nor do Plaintiffs allege

9   any "specific 'affirmative acts on the part of the defendant[] in hiding, concealing or

10  covering up'" the fact that life insurance policies may be sold to third parties (*i.e,* life

11  settlements). *Elias v. Hewlett-Packard Co.*, 12-CV-000421-LHK, 2014 WL 493034,

12  at *10 (N.D. Cal. Feb. 5, 2014) (quoting *Lingsch v. Savage*, 213 Cal. App. 2d 729,

13  734, 29 Cal. Rptr. 201, 204 (1963)). And given the accessibility of information about

14  life settlements on the internet and elsewhere, it is implausible that anyone could pull

15  off "active concealment preventing discovery," *Linear Tech. Corp.*, 152 Cal. App. 4th

16  at 132, 61 Cal. Rptr. 3d at 235, of the fact that life settlements are available.

17        Nor do Plaintiffs identify any statute imposing a duty on Lincoln to disclose

18  particular types of information. *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th

19  1490, 6 Cal. Rptr. 3d 148 (2003). In fact, the Complaint acknowledges that state

20  legislatures have considered—but not adopted—"laws that would require [insurance

21  companies] to disclose to senior insureds various options with their life insurance

22  policies (including life settlements)". Compl. ¶ 24. As relevant here, the California

23  legislature considered and ***rejected*** a bill that would have amended California

24  Insurance Code Section 10113.2 to require that insurers:

25       [S]end written notice to the owner of an individual life insurance

26       policy . . . that ***there may be available alternatives*** and the owner should

27       consult an insurance or financial adviser, at the time of each of the

28       following: (1) When a life insurance company receives from the owner a

13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN
NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE INITIAL COMPLAINT

1    request to surrender, in whole or in part, an individual life insurance

2    policy, or a certificate under a group life insurance policy . . . (4) When a

3    life insurance company sends to the owner a notice of lapse of an

4    individual insurance policy.

5  *See* Sen. Bill No. 1224 (2007-2008 Reg. Sess.) § 10 (unenacted). The legislature

6 subsequently passed an amendment to Section 10113.2, but the amendment **only**

7 required insurers to disclose that insureds "should consult with a licensed insurance or

8 financial advisor" if "they are considering making changes in the status of their

9 policy." *See* CAL. INS. CODE § 10113.2(j) (2010). Section 10113.2 does **not** require

10 insurers to disclose that alternatives are available at all, let alone disclose **any** specific

11 types of alternative, such a life settlement. Plaintiffs' efforts to end run the California

12 legislature's policy judgment through a common-law fraud action—indeed, to compel

13 disclosure not just of the availability of alternatives, but of life settlements in

14 particular—are unavailing. Count I must therefore be dismissed with prejudice.

15       **B.**    **Plaintiffs Fail to State a Common-Law Fraud Claim Because They Have Not Pleaded Facts Sufficient to Establish That Lincoln**

16            **Concealed the Availability of Life Settlements**

17    Plaintiffs' fraud claim fails for a separate and independent reason because—

18 aside from conclusory assertions entitled to no weight, *see Iqbal*, 556 U.S. at 678—

19 Plaintiffs have not pleaded facts showing that Lincoln "concealed or suppressed a

20 material fact," let alone that it did so intentionally with the intent to defraud. *Blickman*

21 *Turkus, LP*, 162 Cal. App. 4th at 868, 76 Cal. Rptr. 3d at 332. Indeed, under Rule

22 9(b), "[t]o make out a claim of fraudulent concealment, plaintiff 'must plead with

23 particularity the circumstances surrounding the concealment[.]'" *Gibson v. U.S.*, 781

24 F.2d 1334, 1345 (9th Cir. 1986) (quoting *Rutledge v. Boston Woven Hose and Rubber*

25 *Co.*, 576 F.2d 248, 250 (9th Cir. 1978)); *see also In re All Terrain Vehicle Litig.*, 978

26 F.2d 1265, at *2 & n.7 (9th Cir. 1992) (unpublished) (applying Rule 9(b)'s

27 particularity requirement to fraudulent concealment claim). Plaintiffs have not

28 satisfied this burden.

14

The Complaint is rife with conclusory assertions that Lincoln was "actively concealing" the life settlement option. Compl. ¶ 1; *see id.* ¶¶ 2, 4-5, 22-26, 42-43, 61, 63; s*ee also* ¶ 23 (alleging "a common and systematic practice by Defendant to hide this option from its insureds"). But it is devoid of factual allegations to support those assertions. *Iqbal*, 556 U.S. at 679 (holding that dismissal is required where "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief'") (quoting FED. R. CIV. P. 8(a)(2)). The only *facts* Plaintiffs allege do not establish concealment: Plaintiffs allege that, "[i]n or around 2008, [they] consulted Defendant's agent to inquire about their options *regarding the Policy*." Compl. ¶ 19. Elsewhere, they explain that they "inquire[d]…about retaining or modifying their existing life insurance policies." Compl. ¶ 1. Plaintiffs then allege that their insurance agent told them about two options: "(1) pay new premiums into the Policy to extend it; or (2) surrender the Policy, in whole or in part, to reduce the cost of insurance." Compl. ¶ 19. Plaintiffs also alleged that the agent "provided [them] with detailed illustrations prepared by Defendant [which] included the cost of insurance, fund and surrender values, and the death benefit of the then-current Policy and alternatives." Compl. ¶ 20. Finally, Plaintiffs allege that "at no point did Defendant or its agent advise Plaintiff that they had the option of selling all or part of the Policy to a third party in a life settlement." Compl. ¶ 20.

These allegations do not establish that Lincoln actively concealed life settlements from Plaintiffs. In fact, that conclusion is entirely inconsistent with the Change Form on which Plaintiffs' claims rely. When Plaintiffs made a partial surrender in February 2008, reducing the Policy specified amount to just over $5 million, *see* Compl. ¶ 21, they did so by executing the Change Form. *See* Klar Declaration ¶ 3, Ex. A. That standard form expressly mentions the life settlement option:

Have you been involved in any discussion about the possible sale or assignment of this policy to a life settlement, viatical or other secondary market provider? . . .

Have you ever sold a policy to a life settlement, viatical or other secondary market provider?

*Id.* The allegation that Plaintiffs' insurance agent did not additionally alert them to this possibility therefore does nothing to establish that Lincoln "actively concealed" information, which in fact was printed on its standard Change Form that Plaintiffs acknowledged they read and signed.

While a motion to dismiss is limited to the facts alleged in the Complaint, it is proper for the Court to consider the Change Form: "A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. the Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006). Here, Plaintiffs allege: "In February 2008, as a result of and in reliance on Defendant's omissions, Plaintiffs surrendered part of the Policy, decreasing its specified amount to just over $5 million." Compl. ¶ 21. The Change Form contains the alleged partial Policy surrender which Plaintiffs allege they made in reliance upon Lincoln's omissions; Plaintiffs' claims are necessarily predicated upon this document. Therefore, the Court may consider it without converting this motion to one for summary judgment. *See Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1143 (9th Cir. 2007).

The circumstances here are similar to those in *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1159 (C.D. Cal. 2007). The plaintiff there claimed that "nowhere" in any "public statement" did certain defendants disclose that investment in Wet Seal was inconsistent with its long-term business strategy. *Id.* at 1159 (internal quotation marks & alteration omitted). The court analyzed publicly available press

releases attached to the defendant's motion to dismiss and concluded that the plaintiffs' assertion was wrong in light of those statements. *See id.* at 1178 n.11 (finding that the plaintiffs' allegation "ignore[d] the totality of [the defendant's] message" on the issue). The court also rejected the plaintiffs' efforts to strike the materials, explaining that, where "a plaintiff's claims are predicated upon a document, the defendant may attach the document to his Rule 12(b)(6) motion, even if the plaintiff['s] complaint does not explicitly refer to it." 518 F. Supp. 2d 1148, 1159 (C.D. Cal. 2007) (citing *Parrino*, 146 F.3d at 706). A court may consider such evidence without converting the motion to dismiss into one for summary judgment because, where "an attached document is integral to the plaintiff's claims and its authenticity is not disputed, the plaintiff 'obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished.'" *Parrino*, 146 F.3d at 707 n.4 (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993)). Likewise here, since Plaintiffs' claims are premised on allegations that they partially surrendered their Policy because Lincoln nowhere disclosed the life settlement option, the Court may properly consider the Change Form establishing that Lincoln disclosed life settlements on the very form effectuating that surrender.

Because Plaintiffs have not adequately pleaded concealment—and cannot plead concealment in light of the language in the Change Form—their fraud claim must be dismissed.

### C.   Plaintiffs Fail to State a Common-Law Fraud Claim Because They Have Not Established Reliance

Plaintiffs' fraud claim fails for another independent reason: They have not pleaded sufficient facts showing that they would not have acted as they did if they had known about life settlements (*i.e.*, reliance). *See Blickman Turkus, LP*, 162 Cal. App. 4th at 868-69, 76 Cal. Rptr. 3d at 333 (explaining that the traditional "reliance" element of a fraud claim is "more precise[ly]" described in the concealment context as

17

"conduct—action or inaction—that differs from what the plaintiff would have done if informed of the concealed fact"). Plaintiffs make conclusory allegations that "had [they] known of the option of a life settlement, they would not have surrendered over $5 million of the Policy for no consideration." Compl. ¶ 59. But they allege no *facts* supporting a plausible inference that, had they known about life settlements, they could have sold their Policy for greater than its cash value and would not have surrendered part of it. Plaintiffs allege nothing regarding the marketability of the Policy in either February 2008 or December 2009; nor do they allege that they could or would actually have sold the Policy to a third party. Their conclusory allegations are insufficient, as they merely recite the bare elements of the concealment cause of action. *See Twombly*, 550 U.S. at 555.

## IV. PLAINTIFFS FAIL TO STATE A CLAIM FOR FINANCIAL ABUSE OF AN ELDER

Even if Plaintiffs Larry and Joan Grill had standing, their elder abuse claim would still fail to state a claim because they have not pleaded, and cannot plead, the essential elements of elder abuse. To state a claim for elder abuse, Plaintiffs must plead facts establishing that Defendant took, secreted, appropriated, obtained or retained the elder's property for a wrongful use or with the intent to defraud, or both. *See* CAL. WELF. & INST. CODE § 15610.30; *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 744, 112 Cal. Rptr. 3d 439, 453 (2010). First, for all of the reasons discussed in Part I *supra*, Plaintiffs Larry and Joan Grill have not pleaded any property interest at stake in this case. Steven Grill is the only Plaintiff with a property interest possibly at stake, and Plaintiffs have not alleged (nor could they) that he was an elder.[3] In any event, Plaintiffs brought the elder abuse claim only on behalf of Larry and Joan Grill.

---

[3] An "elder" under Section 15610.30 is "any person residing in this state, 65 years of age or older." *See* CAL. WELF. & INST. CODE § 15610.27. Plaintiffs do not allege Steven Grill is 65 years or older, nor is it plausible that he was at least 65 at the time of any alleged abuse, given that his parents, Larry and Joan Grill, were 68 and 65 years old when they purchased the Policy in 2004. Compl. ¶ 18.

Second, Plaintiffs' claim also fails because they must allege that Defendant obtained or retained property of which Plaintiffs were deprived. *See Das*, 186 Cal. App. 4th at 744, 112 Cal. Rptr. 3d at 453 (2010).[4] California Welfare and Institutions Code Section 15657.6 requires "[a] person or entity that takes, secretes, appropriates, obtains, or retains . . . property of an elder" to, "upon demand by the elder . . . ***return the property***[.]" CAL. WELF. & INST. CODE § 15657.6. Obviously, a defendant can "return" property only if it was actually taken from someone else. Thus, the financial abuse statute requires not only a deprivation of Plaintiffs' property, but also that Defendant obtain or retain that property.

Parroting the definition of financial abuse of an elder under California's Elder Abuse statute—which is insufficient under Rule 12(b)(6), *see Twombly*, 550 U.S. at 555—Plaintiffs merely allege that Lincoln "took, secreted, appropriated, obtained, or retained" the "over $5 million of the policy" which Plaintiffs surrendered. Compl. ¶ 51; CAL. WELF. & INST. CODE § 15610.30(a)(1). That conclusory allegation does not support their claim. Nothing in Plaintiffs' Complaint suggests that Lincoln acquired or retained the amount surrendered; by surrendering part of the Policy, Plaintiffs merely reduced the amount of death benefit that Lincoln would ultimately pay to the Policy's beneficiary upon both of the insureds deaths. Because Plaintiffs' allegations do not plausibly show that Lincoln took, secreted, appropriated, obtained, or retained any of Plaintiffs' property, the financial elder abuse claim should be dismissed. *See Das v. Bank of Am., N.A.*, 186 Cal. App. 4th at 744, 112 Cal. Rptr. 3d at 453 (2010) (rejecting

---

[4] The version of Section 15610.30 applied in *Das* was effective from January 2001 to December 2008, which necessarily governs Plaintiffs' claim as it relates to the first partial surrender. Section 15610.30 has since been amended to apply where an elder is "deprived of any property right," but the legislature also added Section 15657.6, which requires the "***return*** of the property" taken or retained upon the elder's demand. Because property can only be returned if it was obtained or retained by Defendant, the amendments which went into effect in January 2009 do not change the substantive scope of the law. Indeed, the legislative history confirms that the amendment "***clarifies*** the conduct constituting financial abuse" and the "instrument of ***transfer*** that is subject to scrutiny." Sen. Bill No. 1140, Senate Judiciary Committee Bill Analysis (2007-2008 Reg. Sess.) (Mar. 25, 2008).

an elder abuse claim where "[n]othing in appellant's complaints suggest[ed] that respondent, in issuing a loan to [plaintiff] and transferring his funds at his request, obtained his property[.]").

## V.    PLAINTIFFS FAIL TO STATE A CLAIM UNDER CALIFORNIA'S UNFAIR COMPETITION LAW

Plaintiffs also fail to state a claim under California's Unfair Competition Law ("UCL") because they have not pleaded facts establishing that Lincoln did anything unlawful, fraudulent or unfair. CAL. BUS. & PROF. CODE § 17200 (defining "unfair competition" to include "any unlawful, unfair, or fraudulent business act or practice"); *see also Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837, 51 Cal. Rptr. 3d 118, 128 (2006). Plaintiffs bring a UCL claim under each of the three prongs, *see* Compl. ¶¶ 62-64, but have failed to plead facts establishing any one of them.

*First*, Plaintiffs claim that Lincoln violated the UCL by engaging in unlawful conduct is premised on their elder abuse claim and falls with it. To plead a claim under the "unlawful" prong, Plaintiffs must allege that a business practice violated a predicate federal, state, or local law. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548, 561 (1999). Plaintiffs allege that "Defendant's business practices . . . are unlawful because they constitute financial elder abuse[.]" Compl. ¶ 62. But as explained above, they have not stated an elder abuse claim and therefore fail to state a UCL claim under the unlawful prong.

*Second*, Plaintiffs' UCL claim based on the "fraudulent" prong is premised on their fraudulent concealment claim and falls with it. The UCL prohibits conduct that is likely to deceive members of the public. *Prata v. Sup. Ct.*, 91 Cal. App. 4th 1128, 1136, 111 Cal. Rptr. 2d 296, 302 (2001) (citing *Chern v. Bank of Am.*, 15 Cal. 3d 866, 876, 127 Cal. Rptr. 110, 116 (1976)). A "failure to disclose a fact one has no affirmative duty to disclose" is *not* "'likely to deceive' anyone within the meaning of the UCL." *Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th at 838, 51 Cal. Rptr. 3d at 128 (2006); *see also Elias v. Hewlett-Packard Co.*, 12-CV-000421-LHK,

20

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE INITIAL COMPLAINT

2014 WL 493034, at *9 (N.D. Cal. Feb. 5, 2014) (requiring the same elements to be pleaded for "fraud" prong claims as common law concealment claims). Lincoln had no duty to disclose life settlements options, and Plaintiffs have not alleged facts showing otherwise. Plaintiffs thus fail to state a claim under the UCL's fraud prong.

**Third**, Plaintiffs fail to state a claim under the UCL's "unfair" prong because Plaintiffs have not pleaded that Lincoln violated any public policy or that any harm to them outweighs the utility of Lincoln's alleged non-disclosure. "California appellate courts disagree on how to define an 'unfair' act or practice in the context of a UCL consumer action," *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010); *see Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 593-95, 101 Cal. Rptr. 3d 697, 708 (2009), but Plaintiffs' claims fail under any standard.

Many courts hold that "the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Lesley v. Ocwen Fin. Corp.*, SA CV 12-1737-DOC, 2013 WL 990668, at *6 (C.D. Cal. Mar. 13, 2013) (quoting *Lazo*, C 12-00762 LB, 2012 WL 1831577, at *11 (N.D. Cal. May 18, 2012)); *see also Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 186-87, 83 Cal. Rptr. 3d 548, 565 (1999). Plaintiffs' identify **no** specific constitutional, statutory, or regulatory provisions which establish a public policy that would require an insurer's disclosure of information about life settlements. In fact, the only laws they mention that would require disclosure are ones that have failed to pass. *See* Compl. ¶ 24.[5]

---

[5] Moreover, as the articles and studies referenced in the Complaint highlight, life settlement transactions present a number of potential risks to the policy owners. For example, they are "prime terrain for fraud[,]" *see* James Vlahos, *Are You Worth More Dead Than Alive?*, N.Y. TIMES, Aug. 10, 2012, *available at* http://www.nytimes.com/2012/08/12/magazine/are-you-worth-more-dead-than-alive.html?_r=0, and "policy owners entering into life settlement transactions may incur unexpected tax liabilities [and] may not be able to obtain additional life insurance, if needed, in the future." U.S. GOV'T ACCOUNTABILITY OFFICE, GAO-10-775, LIFE INSURANCE SETTLEMENTS: REGULATORY INCONSISTENCIES MAY POSE A NUMBER OF CHALLENGES (2010).

Some courts applying the "unfair" prong ask whether the "alleged business practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Lesley*, 2013 WL 990668, at *6 (quoting *Lazo v. Bank of Am., N.A.*, C 12-00762 LB, 2012 WL 1831577, at *11 (N.D. Cal. May 18, 2012)). But Plaintiffs fair no better here. Plaintiffs allege in conclusory fashion that "Defendant's business practices, as alleged herein, are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers." Compl. ¶ 63. Such threadbare allegations, devoid of any factual enhancement concerning the public policies at issue or the immorality of Lincoln's alleged misconduct, are insufficient to state a claim for unfair business practices under the UCL. *See Lesley*, 2013 WL 990668, at *7 (dismissing an unfair business practices claim under the second test "because [plaintiffs] [did] not allege that defendants' conduct was unethical in more than conclusory terms"); *Baba v. Hewlett-Packard Co.*, C 09-05946 RS, 2010 WL 2486353, at *8 (N.D. Cal. 2010) (dismissing claim based on vague allegation that "[defendant's] conduct offends public policy and is unethical, oppressive, unscrupulous and violates the laws stated").

And finally, other courts ask whether the injury to the consumer (a) is "substantial," (b) outweighs any "countervailing benefits to consumers or competition," and (c) is a type that "consumers themselves could not reasonably have avoided." *See Lesley*, 2013 WL 990668, at *6. (quoting *Camacho v. Automobile Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403, 48 Cal. Rptr. 3d 770, 777 (2006)). Here too, Plaintiffs' claim fails. Plaintiffs make no allegations on which the Court could conduct the necessary balancing. And they certainly have not pleaded facts showing that consumers could not reasonably have avoided the alleged harm—for instance, by researching online where information about life settlements is readily available. *Cf.* Compl. ¶ 24-25 & nn.1-3 (quoting online information about life settlements).

Thus, under any standard, Plaintiffs have failed to establish an "unfair" business practice. Even aside from the dearth of factual support for their claim, Plaintiffs' unfair business practice claim is especially *implausible* given that the California legislature considered *and rejected* an amendment to the Insurance Code that would have required life insurers to disclose that there may be alternatives to surrender. If failing to disclose that alternatives exist, as a general matter, was not unscrupulous, oppressive or harmful enough for the legislature to mandate disclosure, neither is any failure to disclose the specific alternatives available, such as life settlement options. If the legislature felt otherwise, they would have amended the Insurance Code to require such disclosures. Because they did not, any alleged failure to disclose life settlement options cannot be an unfair business practice under the UCL. Accordingly, Plaintiffs' claim under the "unfair" prong should be dismissed pursuant to Rule 12(b)(6).

Plaintiffs' UCL claim also fails for another independent reason: Under the UCL, the only type of damages available is restitution. *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 970 (S.D. Cal. 2012). Restitution under the UCL is defined as the "return [of] money obtained through an unfair business practice to those persons in interest from whom the property was taken." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144-45, 131 Cal. Rptr. 2d 29, 38 (2003). To plead a claim for restitution under the UCL, Plaintiffs must allege that Defendant "took money directly from them." *White v. Trans Union, LLC*, 462 F. Supp. 2d 1079, 1083 (C.D. Cal. 2006). But here, Plaintiffs allege injury from the fact that they "surrendered part of the Policy, decreasing its specified amount." Compl. ¶ 21. Lincoln did not obtain any money through that surrender; rather, it was simply relieved (in part) of a future obligation to pay. Because Plaintiffs' allegations do not plausibly show that Defendant took or obtained the money Plaintiffs surrendered, their claim for restitution must be dismissed. And since Plaintiffs cannot recover restitution or injunctive relief, *see* Part II *supra*—the only relief the UCL authorizes—Plaintiff's UCL claim must be dismissed in its entirety.

## VI.   PLAINTIFFS' COMPLAINT SHOULD BE DISMISSED BECAUSE ALL OF THEIR CLAIMS ARE TIME-BARRED

Finally, Plaintiffs' claims should be dismissed for the separate and independent reason that they are all time-barred. Where, as here, the "running of the statute [of limitations] is apparent on the face of the complaint, the defense may be raised by a motion to dismiss." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Dismissal is required because Plaintiffs' latest claim accrued in December 2009, when the second partial surrender occurred, yet Plaintiffs waited ***more than four years*** to file suit in January 2014. Because the longest possible statute of limitations applying to their claims is four years, ***all*** of Plaintiffs' claims should be dismissed as time-barred. *See* CAL. CIV. PROC. CODE § 338(d) (establishing a ***three-year*** limitations period for fraud claims); CAL. WELF. & INST. CODE § 15657.7 (establishing a ***four-year*** statute of limitations for financial elder abuse claims); CAL. BUS. & PROF. CODE § 17208 (establishing a ***four-year*** statute of limitations for UCL claims).[6]

Each of Plaintiffs' claims is premised on the same conduct: Plaintiffs allege they were harmed when, as a result of Lincoln's failure to disclose the life settlement option, Plaintiffs surrendered their Policy in February 2008 and December 2009. In California, "a tort cause of action accrues and the limitations period commences when the injury occurs," *Shively v. Bozanich*, 31 Cal. 4th 1230, 1237, 7 Cal. Rptr. 3d 576, 579 (2003), meaning Plaintiffs' latest claim accrued in December 2009, more than four years before they filed suit. Their claims are therefore time-barred.

Plaintiffs also cannot avail themselves of California's discovery rule. Under the discovery rule, "the statute commences to run 'only after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him

---

[6] A "federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011). Also, "[f]ederal courts must abide by a state's tolling rules, which are integrally related to statutes of limitations." *Id.*

24

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE INITIAL COMPLAINT

on inquiry.'" *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 298, 17 Cal. Rptr. 3d 26, 38 (2004). To apply the discovery rule, Plaintiffs must allege that "a reasonable investigation at that time would not have revealed a factual basis" for the particular claim **and** the "time and manner of discovery." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808, 27 Cal. Rptr. 3d 661, 664, 668 (2005). Here, Plaintiffs have made no allegations about when they discovered Lincoln's alleged concealment of life settlement options, how they made such discovery, or why a reasonable investigation at the time of surrender would not have revealed a factual basis for their claim. Thus, the discovery rule does not toll any limitations periods. *See Giordano v. Wachovia Mortg., FSB*, 5:10-CV-04661-JF, 2011 WL 1130523, at *3 (N.D. Cal. Mar. 25, 2011) (holding that plaintiff did not plead facts sufficient to invoke the discovery rule to save their time-barred elder abuse claim where defendant allegedly concealed the fact that plaintiff's loan interest payments would change throughout a loan period but the loan documents plaintiff signed disclosed that the interest rate they "will pay may change on the 15th day of February 2006, and on the same day every month thereafter."); *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1197, 151 Cal. Rptr. 3d 827, 836 (2013) (holding that "the UCL is governed by common law accrual rules to the same extent as any other statute," including the discovery rule).

Because Plaintiffs waited more than four years to file suit and cannot avail themselves of the discovery rule, their claims must be dismissed as time-barred.

## CONCLUSION

For the foregoing reasons, the Complaint should be dismissed with prejudice.

DATED: March 13, 2014

Respectfully submitted,
KIRKLAND & ELLIS LLP

*/s/ Elizabeth L. Deeley*

Elizabeth L. Deeley
*Attorneys for Defendant,*
THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY

1

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2014, I have electronically filed **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE INITIAL COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to the attorneys of record who are registered CM/ECF users.

Executed March 13, 2014, at San Francisco, California.

KIRKLAND & ELLIS LLP


*/s/ Elizabeth L. Deeley*
Elizabeth L. Deeley

Attorneys for Defendant,
THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY