1  Elizabeth L. Deeley (SBN 230798)
   elizabeth.deeley@kirkland.com
2  Austin L. Klar (SBN 292271)
   austin.klar@kirkland.com
3  KIRKLAND & ELLIS LLP
   555 California Street
4  San Francisco, California 94104
   Telephone: (415) 439-1400
5  Facsimile: (415) 439-1500

6  Attorneys for Defendant,
   THE LINCOLN NATIONAL LIFE
7  INSURANCE COMPANY

8

9              **UNITED STATES DISTRICT COURT**

10     **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

11  | LARRY GRILL, JOAN GRILL, and | CASE NO. ED-CV14-00051-JGB (SPx) |

LARRY GRILL, JOAN GRILL, and STEVEN E. GRILL, in his capacity as Trustee of the Grill Irrevocable Trust 2004, dated September 2, 2004, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

LINCOLN NATIONAL LIFE INSURANCE COMPANY,

Defendant.

CASE NO. ED-CV14-00051-JGB (SPx)

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

Judge:          Hon. Jesus G. Bernal

Hearing Date: May 19, 2014
Time:           9:00 A.M.
Courtroom:    3470 Twelfth Street
                Courtroom 1
                Riverside, CA 92501

12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................ 1

FACTUAL BACKGROUND ............................................................................... 3

LEGAL STANDARD .......................................................................................... 4

ARGUMENT ....................................................................................................... 5

I.   PLAINTIFFS LARRY AND JOAN GRILL LACK STANDING
     BECAUSE THEY DO NOT ALLEGE INJURY-IN-FACT ....................... 5

II.  PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF
     WHICH WOULD NOT REDRESS ANY FUTURE HARM TO THEM ......... 7

III. PLAINTIFFS FAIL TO STATE A FRAUD CLAIM ................................ 10

     A.   Plaintiffs Fail to State a Common-Law Fraud Claim Because They
          Have Not Pleaded Facts Sufficient to Establish a Duty to Disclose ........ 10

     B.   Plaintiffs Fail to State a Common-Law Fraud Claim Because They
          Have Not Pleaded Facts Sufficient to Establish That Lincoln
          Concealed the Availability of Life Settlements ...................................... 14

     C.   Plaintiffs Fail to State a Common-Law Fraud Claim Because They
          Have Not Pleaded Facts Sufficient to Establish Reliance ...................... 17

IV.  PLAINTIFFS FAIL TO STATE AN ELDER-ABUSE CLAIM ..................... 18

V.   PLAINTIFFS FAIL TO STATE A UCL CLAIM ........................................ 19

VI.  ALL OF PLAINTIFFS' CLAIMS ARE TIME-BARRED .............................. 23

CONCLUSION .................................................................................................. 25

# TABLE OF AUTHORITIES

**Cases**

*Abarca v. Franklin Cnty. Water Dist.*,
  1:07-CV-0388OWWDLB, 2009 WL 1393508 (E.D. Cal. May 18, 2009) ...............11

*Albano v. Shea Homes Ltd. P'ship*,
  634 F.3d 524 (9th Cir. 2011) ....................................................24

*Anderson v. Brouwer*,
  99 Cal. App. 3d 176, 160 Cal. Rptr. 65 (1979) ......................................24

*Appling v. Wachovia Mortg., FSB*,
  745 F. Supp. 2d 961 (N.D. C.A. 2010).............................................7

*Aryeh v. Canon Bus. Solutions, Inc.*,
  55 Cal. 4th 1185, 151 Cal. Rptr. 3d 827 (2013) ......................................25

*Ashcroft v. Iqbal*,
  556 U.S. 662, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) ............................5, 12, 14

*Baba v. Hewlett-Packard Co.*,
  C 09-05946 RS, 2010 WL 2486353 (N.D. Cal. 2010) ............................22

*Balisteri v. Pacifica Police Dep't*,
  901 F.2d 696 (9th Cir. 1990) ....................................................5

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (1955) ............................5, 17, 19

*Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*,
  162 Cal. App. 4th 858, 76 Cal. Rptr. 3d 325 (2008) ..........................................*passim*

*Campion v. Old Republic Home Protection Co., Inc.*,
  861 F. Supp. 2d 1139 (S.D. Cal. 2012) ....................................................8

*Castagnola v. Hewlett-Packard Co.*,
  C 11-05772 JSW, 2012 WL 2159385 (N.D. Cal. June 13, 2012)..............................9

*Cattie v. Wal-Mart Stores, Inc.*,
  504 F. Supp. 2d 939 (S.D. Cal. 2007) ....................................................9

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163, 83 Cal. Rptr. 2d 548 (1999) ......................................20, 21

*City of Los Angeles v. Lyons*,
  461 U.S. 95, 103 S. Ct. 1160, 75 L. Ed. 2d 675 (1983) ............................8

*Das v. Bank of Am., N.A.*,
  186 Cal. App. 4th 727, 112 Cal. Rptr. 3d 439 (2010) ......................................18, 19

*Daugherty v. Am. Honda Motor Co., Inc.*,
  144 Cal. App. 4th 824, 51 Cal. Rptr. 3d 118 (2006) ................................20

*Davis v. Ford Motor Credit Co.*,
  179 Cal. App. 4th 581, 101 Cal. Rptr. 3d 697 (2009) ................................21

*Dent v. Cox Commc'ns Las Vegas, Inc.*,
  502 F.3d 1141 (9th Cir. 2007) ....................................................16

*Elias v. Hewlett-Packard Co.*,
  12-CV-000421-LHK, 2014 WL 493034 (N.D. Cal. Feb. 5, 2014) ....................13, 20

*Fox v. Ethicon Endo-Surgery, Inc.*,
  35 Cal. 4th 797, 27 Cal. Rptr. 3d 661 (2005) ..................................................24

*FW/PBS, Inc. v. City of Dallas*,
  493 U.S. 215, 110 S. Ct. 596, 107 L. Ed. 2d 603 (1990) ...........................5

*Gibson v. Gov't Emp. Ins. Co.*,
  162 Cal. App. 3d 441, 208 Cal. Rptr. 511 (1984) ....................................12

*Gibson v. U.S.*,
  781 F.2d 1334 (9th Cir. 1986) ..................................................................14

*Giordano v. Wachovia Mortg., FSB*,
  5:10-CV-04661-JF, 2011 WL 1130523 (N.D. Cal. Mar. 25, 2011)........................25

*Gonzales v. Cal. Dep't of Corr.*,
  739 F.3d 1226 (9th Cir. 2014) ....................................................................6

*Henderson v. Gruma Corp.*,
   CV 10-04173 AHM AJWX, 2011 WL 1362188 (C.D. Cal. Apr. 11, 2011) ............9

*Hodgers-Durgin v. de la Vina*,
  199 F.3d 1037 (9th Cir. 1999) ....................................................................9

*In re All Terrain Vehicle Litig.*,
  978 F.2d 1265 (9th Cir. 1992) ..................................................................14

*In re Intel Laptop Battery Litig.*,
  C 09-02889 JW, 2011 WL 7290487 (N.D. Cal. Apr. 7, 2011) ...................9

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
  903 F. Supp. 2d 942 (S.D. Cal. 2012) ......................................................23

*In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices,
   and Products Liability Litig.*,
  826 F. Supp. 2d 1180 (C.D. Cal. 2011) ..................................................11

*In re Wet Seal, Inc. Sec. Litig.*,
  518 F. Supp. 2d 1148 (C.D. Cal. 2007) ..................................................16

*Jablon v. Dean Witter & Co.*,
  614 F.2d 677 (9th Cir. 1980) ..................................................................23

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134, 131 Cal. Rptr. 2d 29 (2003) .......................................23

*Kovich v. Paseo Del Mar Homeowners' Assoc.*,
  41 Cal. App. 4th 863, 48 Cal. Rptr. 2d 758 (1996) ..................................11

*Lesley v. Ocwen Fin. Corp.*,
  SA CV 12-1737-DOC, 2013 WL 990668 (C.D. Cal. Mar. 13, 2013)................21, 22

*Levine v. Blue Shield of Cal.*,
  189 Cal. App. 4th 1117, 117 Cal. Rptr. 3d 262 (2010) .......................11, 12

*Linear Tech. Corp. v. Applied Materials, Inc.*,
  152 Cal. App. 4th 115, 61 Cal. Rptr. 3d 221 (2007) ...........................12, 13

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) ......................6, 7

*Mayfield v. U.S.*,
  599 F.3d 964 (9th Cir. 2010) ....................................................................8

iii

*Parrino v. FHP, Inc.*,
   146 F.3d 699 (9th Cir. 1998), *superseded by statute on other grounds
   as recognized in Abrego Abrego v. the Dow Chem. Co.*, 443 F.3d 676
   (9th Cir. 2006) ..................................................................................7, 16, 17

*Pastoria v. Nationwide Ins.*,
   112 Cal. App. 4th 1490, 6 Cal. Rptr. 3d 148 (2003) .................................13

*Prata v. Sup. Ct.*,
   91 Cal. App. 4th 1128, 111 Cal. Rptr. 2d 296 (2001) (citing
   *Chern v. Bank of Am.*, 15 Cal. 3d 866, 127 Cal. Rptr. 110 (1976)) ..........20

*Rubio v. Capital One Bank*,
   613 F.3d 1195 (9th Cir. 2010) ..................................................................20

*Shively v. Bozanich*,
   31 Cal. 4th 1230, 7 Cal. Rptr. 3d 576 (2003) ...........................................24

*Somers v. Apple, Inc.*,
   729 F.3d 953 (9th Cir. 2013) ......................................................................5

*Vega v. Jones, Day, Reavis & Pogue*,
   121 Cal. App. 4th 282, 17 Cal. Rptr. 3d 26 (2004) ...................................24

*Vu v. Prudential Prop. & Cas. Ins. Co.*,
   26 Cal. 4th 1142, 113 Cal. Rptr. 2d 70 (2001) .........................................11

*Warren v. Fox Family Worldwide, Inc.*,
   328 F.3d 1136 (9th Cir. 2003) .................................................................5, 6

*White v. Trans Union, LLC*,
   462 F. Supp. 2d 1079 (C.D. Cal. 2006) ....................................................23

**Rules**

Fed. R. Civ. P. 12(b)(1) ...................................................................................4
Fed. R. Civ. P. 12(b)(6) ..........................................................................*passim*
Fed. R. Civ. P. 8(a)(2) ...................................................................................15
Fed. R. Civ. P. 9(b) ...........................................................................11, 12, 14

**Constitutional Provisions**

U.S. Const. art. III, § 2, cl. 1 ............................................................................6

**California Codes**

Cal. Bus. & Prof. Code § 17200 ....................................................................19
Cal. Bus. & Prof. Code § 17208 ....................................................................24
Cal. Civ. Proc. Code § 338(d) .......................................................................24
Cal. Ins. Code § 10113.2 .........................................................................13, 14
Cal. Ins. Code § 10113.2(j) (2010) ...............................................................14
Cal. Welf. & Inst. Code § 15610.27 ..............................................................18
Cal. Welf. & Inst. Code § 15610.30 ........................................................18, 19
Cal. Welf. & Inst. Code § 15657.6 ................................................................18

iv

Cal. Welf. & Inst. Code § 15657.7 ................................................................................. 24

**Senate Bills**

Sen. Bill No. 1140, Senate Judiciary Committee Bill Analysis
  (2007-2008 Reg. Sess.) (Mar. 25, 2008) ..................................................... 18

Sen. Bill No. 1224 (2007-2008 Reg. Sess.) § 10 ......................................... 13

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT

## INTRODUCTION

Rather than addressing the multiple defects identified by Defendant The Lincoln National Life Insurance Company ("Defendant" or "Lincoln") in its original motion to dismiss, Plaintiffs filed a First Amended Complaint ("FAC"). But the FAC—which does little more than add conclusory allegations concerning injury and discovery of their claim—suffers from the same fundamental flaws as the original. Plaintiffs still fail to plead facts sufficient to establish standing; rely on a supposed disclosure obligation that the law does not impose (and that the California legislature has specifically rejected; and fail to plead facts showing that Lincoln concealed information from them, especially when that information appeared on the very form changing the death benefit that serves as the basis for their claimed harm, and when that information is widely available in the public sphere. Because Plaintiffs have failed to remedy these and the other defects in their original complaint, the FAC must be dismissed.

**_First_**, Plaintiffs Larry and Joan Grill lack standing and their claims must be dismissed because they have not established any injury-in-fact. The FAC makes clear that the sole owner and sole beneficiary of the Policy is Steven Grill; Larry and Joan Grill are simply the insureds.  As neither the owners nor the beneficiaries of the Policy, they have not alleged that they suffered any concrete harm as a result of the alleged conduct. Any harm associated with a reduction in the face amount of the Policy would affect only the beneficiary, and any harm associated with a missed opportunity to sell the Policy would affect only the owner. Plaintiffs' new allegations that they suffered injury in the premiums they paid do not save their claims because those premiums are still held for the benefit of the owner, Steven Grill. Plaintiffs Larry and Joan Grill therefore have not established any injury-in-fact, and their claims, including the entirety of Count II, brought only by them, must be dismissed.

**_Second_**, all three Plaintiffs lack standing to seek injunctive relief. Their claims for such relief must be dismissed because they have not established any imminent

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

future harm that could be redressed through an injunction. Allegations of past wrongs do not support standing for injunctive relief, nor do allegations of future harm to third parties (such as members of a proposed class). What Plaintiffs must show—but have not shown, even after re-pleading—is that they are likely to suffer future harm absent an injunction. Since Plaintiffs are aware of life settlements now, they have no standing to seek an injunction that would compel Lincoln to tell them about life settlements.

**Third**, Plaintiffs fail to state a claim for fraudulent concealment because they have not established the essential elements of duty, concealment and reliance. They have not alleged facts showing that Lincoln had a duty to disclose that they could sell their Policies to a third party through a life settlement. Under California law, an insurer is not a fiduciary to the insured and any special duties arise in the context of coverage and claim processing not at issue here. Plaintiffs also fail to plead facts showing that Lincoln concealed the life settlement option. Their allegations are particularly wanting in light of their admission that Defendant's agent **told them** about life settlements, and the Change Form Plaintiffs signed to partially surrender the Policy, which **explicitly asks about** the life settlement option. That form is properly considered now because Plaintiffs' claims necessarily rely on it. Plaintiffs also have failed to allege that they would (or could) have sold their Policy to a third party through a life settlement for greater than its cash value in lieu of partial surrender had they known about life settlements.

**Fourth**, Plaintiffs fail to state a claim for elder abuse because they do not allege that Lincoln wrongly took or retained any property, let alone property belonging to Larry or Joan Grill. The harms Plaintiffs allege involve a change in death benefit payments that would affect the beneficiary or Policy changes impacting the Policy owner—in both cases, Steven Grill—not the insureds. And Plaintiffs new allegations that Lincoln "took, secreted, appropriated, obtained, or retained" premium payments merely parrot the relevant statutory text. Moreover, those allegations do not support their claim because the Policy makes clear that premiums are held for the benefit of

2

the owner. Steven Grill did not bring the elder abuse claim, and Plaintiffs have not alleged that he is an elder.

*Fifth*, Plaintiffs fail to state a claim under California's Unfair Competition Law ("UCL") because they failed to allege facts showing that Lincoln's conduct was unlawful, unfair, or fraudulent. Their unlawful and fraudulent allegations rely entirely on the other two claims (elder abuse and fraudulent concealment, respectively) and therefore fail together with those claims. And while California courts apply three different tests to determine whether a business practice is "unfair," Plaintiffs' claim meets none of them. Moreover, Plaintiffs cannot obtain the only type of monetary relief available under that law—restitution—because they cannot show that Lincoln took any property from them when they partially surrendered the Policy.

*Sixth*, all of Plaintiffs' claims are time-barred. The claims are subject to limitations periods of three years (fraud) or four years (elder abuse and UCL), yet Plaintiffs filed suit more than four years after their claims accrued. Plaintiffs' new allegations seeking to invoke the discovery rule are unavailing because they have not pleaded facts plausibly showing—as they must—that a reasonable investigation would not have revealed the basis for their claims.

## FACTUAL BACKGROUND

The FAC largely tracks the original complaint, as Plaintiffs have done little more than add conclusory allegations concerning injury and discovery of their claim, and the factual background is therefore substantially unchanged. *See* Declaration of Austin L. Klar in Support of Defendant's Motion to Dismiss the First Amended Complaint ("Klar Decl.") ¶ 4, Ex. C (showing changes between complaints).

Plaintiffs purchased a $7.2 million life insurance policy from Lincoln on November 11, 2004. FAC ¶¶ 17, 20. The owner and beneficiary was Steven E. Grill, Trustee of the Grill Irrevocable Trust. FAC ¶ 17. Larry and Joan Grill were the insureds, meaning that the death benefit was payable upon their deaths. FAC ¶¶ 17-18.

3

Specifically, because the Policy is a "second to die" policy, it requires payment of the death benefit only after both insureds have died. FAC ¶ 18.

Plaintiffs allege that, in 2008, the investment returns on the Policy became insufficient to cover the cost of insurance. FAC ¶ 20. Plaintiffs inquired "about retaining or modifying the Policy[,]" and their agent told them that they could "pay new premiums into the Policy to extend it" or "surrender the Policy, in whole or in part, to reduce the cost of insurance." FAC ¶¶ 2, 20. Plaintiff Steven Grill partially surrendered in February 2008 by submitting a Change Form reducing the Policy's face amount to about $5.4 million. FAC ¶ 22; s*ee also* Klar Decl. ¶ 2, Ex. A. He further reduced it to $2 million in 2009. FAC ¶ 23.

Plaintiffs allege that neither Lincoln nor their insurance agent told them they could "sell[] all or part of the Policy [to a third party] in a life settlement." FAC ¶ 21. They claim that this alleged failure constituted common-law fraud, *see* FAC ¶¶ 46-54, financial abuse of an elder under the California Elder Abuse Act, *see* FAC ¶¶ 55-65, and an unlawful, unfair, and fraudulent business practice under the California Unfair Competition Law, *see* FAC ¶¶ 66-73. Plaintiffs seek class certification, money damages, restitution, injunctive relief, and costs and fees. *See* FAC, Prayer for Relief.

The FAC adds new factual allegations that Plaintiffs Larry and Joan Grill "made premium payments totaling several hundred thousand dollars[,]" FAC ¶ 19; *see also* FAC ¶¶ 24, 57, 67; that, "[h]ad Plaintiffs been aware of the option of a life settlement, they would not have surrendered[,]" FAC ¶ 29; that "Defendant instructed its agents to, and itself did, fail to inform and/or conceal the option of a life settlement[,]" FAC ¶ 49; and that "Plaintiffs did not discover that Defendant had omitted or concealed the option of a life settlement until Defendant's agent revealed it to them in March 2013," FAC ¶ 35.

## **LEGAL STANDARD**

A court must dismiss a claim for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) when a plaintiff lacks standing. *See, e.g.,*

4

1    *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).

2    Plaintiffs bear the burden to "allege[] facts essential to show jurisdiction." *FW/PBS,*

3    *Inc. v. City of Dallas*, 493 U.S. 215, 231, 110 S. Ct. 596, 608, 107 L. Ed. 2d 603

4    (1990) (internal quotation marks and alterations omitted). "If they fail to make the

5    necessary allegations, they have no standing," and the action must be dismissed. *Id.*

6        A court may also dismiss claims under Rule 12(b)(6) based on "the lack of a

7    cognizable legal theory or the absence of sufficient facts alleged under a cognizable

8    legal theory." *Balisteri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A

9    plaintiff must plead facts sufficient "to 'state a claim to relief that is plausible on its

10   face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868

11   (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1973,

12   167 L. Ed. 2d 929 (1955)). "Threadbare recitals of the elements of a cause of action,

13   supported by mere conclusory statements, do not suffice." *Id.* Nor do "naked

14   assertions devoid of further factual enhancement." *Id.* (internal alterations and

15   quotation marks omitted). The court must "draw on its judicial experience and

16   common sense," and if the facts alleged "do not permit the court to infer more than the

17   mere possibility of misconduct," the claim must be dismissed. *Id.* at 1950. In short, a

18   plaintiff may not just "'plead[] facts that are merely consistent with a defendant's

19   liability.'" *Somers v. Apple, Inc.*, 729 F.3d 953, 960 (9th Cir. 2013) (quoting *Iqbal*,

20   556 U.S. at 678). The allegations must "rise above the mere conceivability or

21   possibility of unlawful conduct" and "be 'factually suggestive'" of wrongdoing. *Id.*

## ARGUMENT

### I.   PLAINTIFFS LARRY AND JOAN GRILL LACK STANDING BECAUSE THEY DO NOT ALLEGE INJURY-IN-FACT

25        Plaintiffs Larry and Joan Grill lack standing because they are neither owners

26   nor beneficiaries of the Policy and thus have not established injury-in-fact. It is well

27   settled that, "if [a plaintiff] lacks standing . . . , the district court [does] not have

28   subject matter jurisdiction and dismissal [i]s appropriate" under Rule 12(b)(1).

5

1    *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1140 (9th Cir. 2003).

2    Moreover, the elements of standing—rooted in Article III's "Case or Controversy"

3    requirement, *see* U.S. Const. art. III, § 2, cl. 1—"are not mere pleading requirements

4    but rather an indispensable part of the plaintiff's case." *Lujan v. Defenders of Wildlife*,

5    504 U.S. 555, 561, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). It is part of "the

6    irreducible constitutional minimum of standing" that a "plaintiff must have suffered

7    an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete

8    and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* at

9    560 (internal citations and quotation marks omitted). Plaintiffs also generally "must

10   assert [their] ***own*** legal rights and interests[.]" *Gonzales v. Cal. Dep't of Corr.*, 739

11   F.3d 1226, 1234 (9th Cir. 2014) (emphasis added).[1]

12          Plaintiffs Larry and Joan Grill have not met their burden of establishing injury-

13   in-fact. To the contrary, the FAC alleges that ***Steven*** Grill "is the owner and

14   beneficiary of the Policy," FAC ¶ 9, and therefore the one whose interests are

15   potentially at stake. *See also id.* ¶ 17 ("Plaintiffs Larry Grill and Joan Grill were

16   named as the insureds under the Policy"). As neither the owners nor beneficiaries of

17   the Policy, Larry and Joan Grill have failed to establish any injury-in-fact ***suffered by***

18   ***them*** as a result of the alleged concealment of a life settlement option.

19          The only plausible injuries alleged here would flow to the beneficiary or the

20   owner of the Policy, not the insured. Plaintiffs' primary claim of injury is that, "[a]s a

21   direct and proximate result of Defendant's failure to inform and/or concealment of the

22   option of a life settlement, Plaintiffs surrendered over $5 million (in other words, gave

23   up over $5 million in coverage) of the Policy for no consideration." FAC ¶ 5. But

24   reducing the Policy's face amount—*i.e.*, the amount paid upon death—affects the

25   beneficiary, not the insured. The reduction could not plausibly harm Plaintiffs Larry

26   and Joan Grill since the death benefit is payable only after their deaths.

27   _____

28   [1] All emphasis added unless stated otherwise.

1    Plaintiffs allege they "suffered injury through the loss in value of the Policy, an

2 asset for which they paid several hundred thousand dollars in premiums[.]" FAC ¶ 24.

3 That they paid premiums, however, does not mean they would be injured by a "loss in

4 value." Put simply, Plaintiffs cannot claim injury from the lost opportunity to sell

5 something, or from the loss in value of something, they did not own in the first place.

6    Nor do Plaintiffs establish injury-in-fact through their new allegations that they

7 have lost property "in the form of the actual premium payments they paid toward the

8 Policy." FAC ¶ 58. As the Policy makes clear,[2] "all premiums received" are added to

9 the "Policy Fund Value," upon which the owner earns guaranteed interest for the

10 policy's duration. *See* Klar Decl. ¶ 3, Ex. B at 18. This Policy Fund Value covers

11 charges associated with maintaining the Policy, *id.* at 17, and remains available to the

12 owner in the event of surrender, *id.* at 11, 19, or through a Policy Loan, *id.* at 20.

13 Since premiums paid into the Policy remain available to the owner, Plaintiffs have not

14 "lost" these premiums.

15    Nothing else in the FAC establishes (or could establish) that Plaintiffs Larry

16 and Joan Grill have suffered any injury-in-fact. Thus their claims, including the

17 entirety of Count II, which only they brought, must thus be dismissed with prejudice.

18 **II.    PLAINTIFFS LACK STANDING TO SEEK INJUNCTIVE RELIEF**
19 **WHICH WOULD NOT REDRESS ANY FUTURE HARM TO THEM**

20    All three Plaintiffs lack standing to seek injunctive relief because they cannot

21 establish any imminent future harm from which an injunction would protect them.

22 Another "constitutional minimum of standing" is redressability. *Lujan*, 504 U.S. at

23 560-61. That is, "it must be 'likely,' as opposed to merely 'speculative,' that [an actual

24 or imminent injury-in-fact] will be 'redressed by a favorable decision.'" *Id.* at 561

25

26 _____
27 [2]   The Policy may be considered at this stage because Plaintiffs explicitly refer to it
throughout their Complaint. *See Appling v. Wachovia Mortg., FSB*, 745 F. Supp.
2d 961, 968 (N.D. Cal. 2010) (citing *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th
Cir. 1998), *superseded by statute on other grounds as recognized in Abrego
Abrego v. the Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir. 2006)).

28

(quoting *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 38, 96 S. Ct. 1917, 1924, 48 L. Ed. 2d 450 (1976)). And one seeking injunctive relief "must establish that he or she is 'realistically threatened by a repetition of the violation' in order to establish the relief sought would redress the alleged injuries." *Campion v. Old Republic Home Protection Co., Inc.*, 861 F. Supp. 2d 1139, 1147 (S.D. Cal. 2012) (quoting *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006)).

Plaintiffs lack standing as they have not shown, and cannot show, that they are likely to suffer repeat harm. "Past exposure to harmful or illegal conduct" is not enough, *Mayfield v. U.S.*, 599 F.3d 964, 970 (9th Cir. 2010). A plaintiff must affirmatively establish that he is "likely to suffer ***future*** injury from the [challenged conduct]." *City of Los Angeles v. Lyons*, 461 U.S. 95, 105, 103 S. Ct. 1160, 1667, 75 L. Ed. 2d 675 (1983). Plaintiffs cannot make that showing here.

Plaintiffs in no way allege how they might suffer future harm from what they challenge: Lincoln's alleged failure "to advise them that they can sell all or part of their [P]olicy to a third party" (*i.e*, a failure to inform them of life settlements). FAC ¶ 1. Plaintiffs allege no plans to make another adjustment to the Policy. And even if they did, there is no way that they could plausibly suffer the same harm ***again*** because they now know about life settlements and acknowledge that such information is publicly available. *See, e.g.*, FAC ¶¶ 3, 26-28 (discussing *The New York Times* and other publically available articles about life settlements). Indeed, a concealment claim under California law requires that the plaintiff be "unaware of the fact" not disclosed. *Blickman Turkus, LP v. MF Downtown Sunnyvale, LLC*, 162 Cal. App. 4th 858, 868, 76 Cal. Rptr. 3d 325, 332 (2008). Plaintiffs could not satisfy that element prospectively; an injunction here would require Lincoln to tell Plaintiffs something they already know, which would not redress anything.

Numerous courts have reached the same result. When plaintiffs sued Intel for allegedly failing to disclose that the battery performance benchmarks they used to market their laptops were created by Intel, the district court held that they lacked

8

1  standing to seek an injunction because they were asking for disclosure of something

2  they already knew. *See In re Intel Laptop Battery Litig.*, C 09-02889 JW, 2011 WL

3  7290487 (N.D. Cal. Apr. 7, 2011). The court explained that, "[i]f a plaintiff has

4  knowledge of a defendant's practices, that plaintiff cannot have standing to seek

5  injunctive relief . . . because the plaintiff's knowledge precludes him from showing a

6  likelihood of being injured in the future by those practices." *Id.* at *2. Many other

7  courts have come to the same conclusion. *See, e.g.*, *Castagnola v. Hewlett-Packard*

8  *Co.*, C 11-05772 JSW, 2012 WL 2159385, at *6 (N.D. Cal. June 13, 2012) (finding no

9  "realistic threat that [plaintiffs] would be harmed by Defendants' conduct in the

10  future" since they "now have knowledge of the [allegedly concealed information]");

11  *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 951 (S.D. Cal. 2007) ("[I]t is

12  unclear how prospective relief will redress [plaintiff's] injury, since she is now fully

13  aware of the linens' thread count [which the defendant was allegedly

14  misrepresenting].").[3]

15  That other people—even those in Plaintiffs' proposed class—may not know

16  about life settlements does nothing to change the analysis:

17  Unless the named plaintiffs are themselves entitled to seek injunctive

18  relief, they may not represent a class seeking that relief. Any injury

19  unnamed members of [a] proposed class may have suffered is simply

20  irrelevant to the question whether the named plaintiffs are entitled to the

21  injunctive relief they seek.

22  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999). Plaintiffs thus

23  lack standing for injunctive relief, and their claims for such relief must be dismissed.

24

25  [3] Some courts have held in false advertising cases that a plaintiff who knows about the
    falsity can still pursue an injunction, but the considerations driving those decisions are

26  not present here. *See, e.g.*, *Henderson v. Gruma Corp.*, CV 10-04173 AHM AJWX,
    2011 WL 1362188 (C.D. Cal. Apr. 11, 2011). This case is not about false statements

27  to the public, but the alleged failure to disclose information that Plaintiffs already
    know and that Plaintiff admits is already publically available.

28

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT

### III.    PLAINTIFFS FAIL TO STATE A FRAUD CLAIM

Plaintiffs also have failed to state a claim for fraud. They rely on a theory of fraudulent concealment and therefore must prove (and at this stage, plead sufficient facts to plausibly establish) five elements:

> (1) the defendant . . . concealed or suppressed a material fact, (2) the defendant [was] under a duty to disclose the fact to the plaintiff, (3) the defendant . . . intentionally concealed or suppressed the fact with the intent to defraud the plaintiff, (4) the plaintiff [was] unaware of the fact and would not have acted as he did if he had known of the concealed or suppressed fact, and (5) as a result of the concealment or suppression of the fact, the plaintiff . . . sustained damage.

*Blickman Turkus, LP*, 162 Cal. App. 4th at 868, 76 Cal. Rptr. 3d at 332 (2008). Plaintiffs' allegations fail to establish most of these elements. First, they fail to establish that Lincoln had a duty to disclose to Plaintiffs that they could sell the Policy to a third party through a life settlement. Second, Plaintiffs fail to plead facts showing that Lincoln concealed this option, particularly where the Change Form (properly considered at this stage) explicitly asks about life settlements, and where Plaintiffs admit that Defendant's agent told them about life settlements in 2013. Third, Plaintiffs have failed to plead facts showing reliance—that is, that they would (or could) have sold their Policy to a third party through a life settlement provider for greater than its cash value in lieu of partial surrender had they known about life settlements. Their fraud claim must therefore be dismissed.

### A.    Plaintiffs Fail to State a Common-Law Fraud Claim Because They Have Not Pleaded Facts Sufficient to Establish a Duty to Disclose

Plaintiffs' claim that Lincoln committed fraud by failing "to advise them that they can sell all or part of their policy ***to a third party*** . . . (*i.e.,* a life settlement)[,]" FAC ¶ 1, must be dismissed because they have not established that Lincoln was "under a ***duty to disclose*** the fact to the plaintiff[.]" *Blickman Turkus, LP*, 162 Cal.

10

App. 4th at 868, 76 Cal. Rptr. 3d at 332; *see also In re Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig.*, 826 F. Supp. 2d 1180, 1205 (C.D. Cal. 2011) ("[F]raud by concealment is actionable only if the defendant had a duty to disclose the concealed fact."). Because this is an element of fraud, Rule 9(b) requires that the circumstances giving rise to the duty to disclose must be "state[d] with particularity." Fed. R. Civ. P. 9(b); *see also Abarca v. Franklin Cnty. Water Dist.*, 1:07-CV-0388OWWDLB, 2009 WL 1393508, at *8 (E.D. Cal. May 18, 2009) ("In conjunction with Rule 9(b), Plaintiffs must allege the existence of a duty to disclose with particularity."). Plaintiffs completely fail to carry that burden.

A duty to disclose may arise from a "fiduciary or confidential relationship giving rise to a duty to disclose," *Kovich v. Paseo Del Mar Homeowners' Assoc.*, 41 Cal. App. 4th 863, 866, 48 Cal. Rptr. 2d 758, 760 (1996), but Plaintiffs have not pleaded facts establishing such a relationship here. The California Supreme Court has held that an insurer is ***not*** a fiduciary of its insured. *See Vu v. Prudential Prop. & Cas. Ins. Co.*, 26 Cal. 4th 1142, 1150-51, 113 Cal. Rptr. 2d 70, 76 (2001) ("The insurer-insured relationship, however, is not a true 'fiduciary relationship[.]'").

Courts impose heightened duties on an insurer dealing with its insured where the information "relate[s] to ***coverage*** or the ***processing*** of claims." *Levine v. Blue Shield of Cal.*, 189 Cal. App. 4th 1117, 1131, 117 Cal. Rptr. 3d 262, 273 (2010). In *Levine*, plaintiffs alleged Blue Shield concealed that their premiums would be lower if they restructured their policy by naming a different primary insured and adding minor dependents to a single family plan. The court held that Blue Shield owed no duty to disclose that information because the issue of premium charges "does not relate to coverage or the processing of claims." *Id.*

The ability to sell a policy to a third party likewise does not relate to coverage or claims-processing. Lincoln has no duty to inform policyholders of transactions they might conduct with third parties. *See Gibson v. Gov't Emp. Ins. Co.*, 162 Cal. App. 3d

11

441, 452, 208 Cal. Rptr. 511, 519 (1984) (holding that an insurer had no duty to advise the insured of coverage available elsewhere in the industry). That Plaintiffs have an on-going relationship with Lincoln does not alter Lincoln's duties. *See Levine*, 189 Cal. App. 4th at 1130-31, 117 Cal. Rptr. 3d at 273 (rejecting the argument that an existing insurer-insured relationship creates different disclosure duties). Lincoln had no duty based on its relationship with Plaintiffs to disclose life settlement options.

Further, while a duty to disclose may also arise from the specific facts when there is a non-fiduciary relationship, *see, e.g.*, *Linear Tech. Corp. v. Applied Materials, Inc.*, 152 Cal. App. 4th 115, 132, 61 Cal. Rptr. 3d 221, 234 (2007), Plaintiffs do not allege any conduct giving rise to a duty to disclose life settlement options here. Plaintiffs generally allege only that they "consulted Defendant's agent to inquire about their options ***regarding the Policy***" and that "Defendant, through its agent, represented to Plaintiffs that they had two options: (1) pay new premiums into the Policy to extend it; or (2) surrender the Policy, in whole or in part, to reduce the cost of insurance." FAC ¶ 20. Defendant allegedly provided "illustrations" to Plaintiffs that "included cost of insurance, fund and surrender values, and the death benefit of the then-current Policy and alternatives," FAC ¶ 21, but Plaintiffs provide no detail concerning specific representations made or information provided by the agent, or whether and how any representations or information was misleading absent disclosure of life settlement options. Plaintiffs allege in conclusory fashion that information provided to them was "likely to mislead for failing to communicate the facts suppressed or undisclosed." FAC ¶ 52. But this sort of allegation—merely reciting the elements of a fraud claim—is insufficient to state a claim under Rule 12(b)(6), *see Iqbal*, 556 U.S. at 678, let alone with the particularity that Rule 9(b) requires.

Plaintiffs also cannot avail themselves of the principle that a duty to disclose may arise where material facts "[are] known or accessible only to defendants." *Linear Tech. Corp.*, 152 Cal. App. 4th at 132, 61 Cal. Rptr. 3d at 235. Nothing in the FAC

12

suggests that only Lincoln could know about life settlements. Indeed, Plaintiffs acknowledge that information about life settlements has been publicized in *The New York Times* and is available online. FAC ¶¶ 26-28. Nor do Plaintiffs allege any "specific 'affirmative acts on the part of the defendant[] in hiding, concealing or covering up'" the fact that life insurance policies may be sold to third parties (*i.e,* life settlements). *Elias v. Hewlett-Packard Co.*, 12-CV-000421-LHK, 2014 WL 493034, at *10 (N.D. Cal. Feb. 5, 2014) (quoting *Lingsch v. Savage*, 213 Cal. App. 2d 729, 734, 29 Cal. Rptr. 201, 204 (1963)). And given the accessibility of information about life settlements on the internet and elsewhere, it is implausible that anyone could pull off "active concealment preventing discovery" of the fact that life settlements are available. *Linear Tech. Corp.*, 152 Cal. App. 4th at 132, 61 Cal. Rptr. 3d at 235.

Nor does any statute impose a duty on Lincoln to disclose particular types of information. *See Pastoria v. Nationwide Ins.*, 112 Cal. App. 4th 1490, 6 Cal. Rptr. 3d 148 (2003). In fact, Plaintiffs acknowledge that state legislatures have considered—but not adopted—"laws that would require [insurance companies] to disclose to senior insureds various options with their life insurance policies (including life settlements)". FAC ¶ 26. In fact, the California legislature considered and *rejected* a bill that would have amended California Insurance Code Section 10113.2 to require that insurers:

> [S]end written notice to the owner of an individual life insurance policy . . . that ***there may be available alternatives*** and the owner should consult an insurance or financial adviser, at the time of each of the following: (1) When a life insurance company receives from the owner a request to surrender, in whole or in part, an individual life insurance policy, or a certificate under a group life insurance policy. . . . (4) When a life insurance company sends to the owner a notice of lapse of an individual insurance policy.

*See* Sen. Bill No. 1224 (2007-2008 Reg. Sess.) § 10 (unenacted). The legislature did amend Section 10113.2, but the amendment required insurers to disclose ***only*** that

insureds "should consult with a licensed insurance or financial advisor" if "they are considering making changes in the status of their policy[.]" *See* Cal. Ins. Code § 10113.2(j) (2010). Section 10113.2 does **not** require insurers to disclose that alternatives are available at all, let alone to disclose **any** specific alternative, such as a life settlement. Plaintiffs' efforts to end run the California legislature's policy judgment through a common-law fraud action—indeed, to compel disclosure not just of the availability of alternatives, but of life settlements in particular—are unavailing. Count I must therefore be dismissed with prejudice.

### B. Plaintiffs Fail to State a Common-Law Fraud Claim Because They Have Not Pleaded Facts Sufficient to Establish That Lincoln Concealed the Availability of Life Settlements

Plaintiffs' fraud claim fails for an independent reason: Aside from conclusory assertions entitled to no weight, *see Iqbal*, 556 U.S. at 678, Plaintiffs have not pleaded facts showing that Lincoln "concealed or suppressed a material fact," let alone that it did so with the intent to defraud. *Blickman Turkus, LP*, 162 Cal. App. 4th at 868, 76 Cal. Rptr. 3d at 332. Under Rule 9(b), "[t]o make out a claim of fraudulent concealment, plaintiff 'must plead with particularity the circumstances surrounding the concealment[.]'" *Gibson v. U.S.*, 781 F.2d 1334, 1345 (9th Cir. 1986) (quoting *Rutledge v. Boston Woven Hose and Rubber Co.*, 576 F.2d 248, 250 (9th Cir. 1978)); *see also In re All Terrain Vehicle Litig.*, 978 F.2d 1265, at *2 & n.7 (9th Cir. 1992) (unpublished) (applying Rule 9(b)'s particularity requirement to fraudulent concealment claim). Plaintiffs have not satisfied this burden.

Plaintiffs no longer claim that Lincoln "actively concealed" the life settlement option, *cf.* Compl. ¶¶ 1-2, 4-5, 22-26, 42-43, 61, 63, now alleging simply that Lincoln "omitted or concealed" the life settlement option. FAC ¶ 2; *see id.* ¶¶ 30, 34-35; s*ee also* ¶ 25 (alleging "a common and systematic practice by Defendant to hide this option from its insureds"). But the FAC is still devoid of factual allegations to support those assertions. *Iqbal*, 556 U.S. at 679 (holding that dismissal is required where "the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to

14

---

relief'") (quoting Fed. R. Civ. P. 8(a)(2)). The only *facts* Plaintiffs allege do not establish concealment: They allege that, "[i]n or around 2008, [they] consulted Defendant's agent to inquire about their options *regarding the Policy*[,]" FAC ¶ 20; that they "inquire[d] . . . about retaining or modifying their existing life insurance policies[,]" FAC ¶ 1; that their insurance agent told them about two options: "(1) pay new premiums into the Policy to extend it; or (2) surrender the Policy, in whole or in part, to reduce the cost of insurance," FAC ¶ 20; that the agent also "provided [them] with detailed illustrations prepared by Defendant [which] included the cost of insurance, fund and surrender values, and the death benefit of the then-current Policy and alternatives," FAC ¶ 21; and finally, that "[at] no point did Defendant or its agent advise Plaintiffs that they had the option of selling all or part of the Policy [to] a third party in a life settlement." FAC ¶ 21.

These allegations do not establish that Lincoln concealed life settlements from Plaintiffs. In fact, that conclusion is entirely inconsistent with the Change Form on which Plaintiffs' claims rely. When Plaintiffs made a partial surrender in February 2008, reducing the Policy specified amount to just over $5 million, *see* FAC ¶ 22, they did so by executing the Change Form. *See* Klar Decl. ¶ 2, Ex. A. That standard form expressly asks about the life settlement option:

> Have you been involved in any discussion about the possible sale or assignment of this policy to a life settlement, viatical or other secondary market provider? . . .

> Have you ever sold a policy to a life settlement, viatical or other secondary market provider?

*Id.* The allegation that Plaintiffs' insurance agent did not additionally alert them to this possibility therefore does nothing to establish that Lincoln concealed information, which was printed on its standard Change Form that Plaintiffs acknowledged they read and signed. Further, Plaintiffs' admission that "Defendant's agent revealed [the life settlement option] to them in March 2013[,]" FAC ¶ 35, completely undermines

15

the plausibility of their claims, which are based on an allegedly "common and systematic practice" of concealing life settlement options. FAC ¶ 1.

While a motion to dismiss is limited to the facts alleged in the FAC, the Change Form is properly considered: "A district court ruling on a motion to dismiss may consider documents 'whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading.'" *Parrino v. FHP, Inc.*, 146 F.3d 699, 705 (9th Cir. 1998), *superseded by statute on other grounds as recognized in Abrego Abrego v. the Dow Chem. Co.*, 443 F.3d  676 (9th Cir. 2006). Here, Plaintiffs allege that, "as a result of and in reliance on Defendant's omissions, [they] surrendered part of the Policy, decreasing its specified amount to approximately $5.4 million." FAC ¶ 22. The Change Form effectuated that partial surrender, and Plaintiffs' claims therefore necessarily rely upon this document. The Court may thus consider it without converting this motion to one for summary judgment. *See Dent v. Cox Commc'ns Las Vegas, Inc.*, 502 F.3d 1141, 1143 (9th Cir. 2007).

The circumstances here are similar to those in *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148, 1159 (C.D. Cal. 2007). The plaintiff there claimed that "nowhere" in any "public statement" did certain defendants disclose that investment in Wet Seal was inconsistent with its long-term business strategy. *Id.* at 1159. The court analyzed publicly available press releases attached to the defendant's motion to dismiss and concluded that the plaintiffs' assertion was wrong in light of those statements. *See id.* at 1178 n.11 (finding that the plaintiffs' allegation "ignore[d] the totality of [the defendant's] message" on the issue). The court also rejected the plaintiffs' efforts to strike the materials, explaining that, where "a plaintiff's claims are predicated upon a document, the defendant may attach the document to his Rule 12(b)(6) motion, even if the plaintiff['s] complaint does not explicitly refer to it." *Id.* at 1159 (citing *Parrino*, 146 F.3d at 706). A court may consider such evidence because, where "an attached document is integral to the plaintiff's claims and its

16

authenticity is not disputed, the plaintiff 'obviously is on notice of the contents of the document and the need for a chance to refute evidence is greatly diminished.'" *Parrino*, 146 F.3d at 707 n.4 (quoting *Pension Ben. Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196-97 (3d Cir. 1993)). Likewise here, since Plaintiffs' claims necessarily depend on the statements made by Lincoln in connection with their partial surrender, the Court may properly consider the Change Form establishing that Lincoln disclosed life settlements on the very form effectuating that surrender.

Because Plaintiffs have not adequately pleaded concealment—and cannot do so in light of the language in the Change Form—their fraud claim must be dismissed.

### C.    Plaintiffs Fail to State a Common-Law Fraud Claim Because They Have Not Pleaded Facts Sufficient to Establish Reliance

Plaintiffs' fraud claim fails for another independent reason: They have not pleaded sufficient facts showing that they would not have acted as they did if they had known about life settlements (*i.e.*, reliance). *See Blickman Turkus, LP*, 162 Cal. App. 4th at 868-69, 76 Cal. Rptr. 3d at 333 (explaining that the "reliance" element of fraud is "more precise[ly]" described in the concealment context as "conduct—action or inaction—that differs from what the plaintiff would have done if informed of the concealed fact"). Plaintiffs make conclusory allegations that, "had [they] known of the option of a life settlement, they would not have surrendered over $5 million of the Policy for no consideration." FAC ¶ 67. But they allege no ***facts*** supporting a plausible inference that, had they known about life settlements, they could have sold their second-to-die Policy for greater than its cash value and would not have partially surrendered it. Plaintiffs allege nothing about the marketability of the Policy in 2008 or 2009; nor do they allege that they could or would actually have sold the Policy to a third party. Their conclusory allegations are insufficient, as they merely recite the bare elements of the concealment cause of action. *See Twombly*, 550 U.S. at 555.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

**IV.    PLAINTIFFS FAIL TO STATE AN ELDER-ABUSE CLAIM**

Even if Plaintiffs Larry and Joan Grill had standing, their elder abuse claim would still fail to state a claim because they have not pleaded, and cannot plead, the essential elements of elder abuse. To state a claim for elder abuse, Plaintiffs must plead facts establishing that Defendant took, secreted, appropriated, obtained or retained the elder's property for a wrongful use or with the intent to defraud, or both. *See* Cal. Welf. & Inst. Code § 15610.30; *Das v. Bank of Am., N.A.*, 186 Cal. App. 4th 727, 744, 112 Cal. Rptr. 3d 439, 453 (2010). First, for all of the reasons discussed in Part I *supra*, Plaintiffs Larry and Joan Grill have not pleaded any property interest at stake in this case. Steven Grill is the only Plaintiff with a property interest possibly at stake, and Plaintiffs have not alleged (nor could they) that he was an elder.[4] In any event, Plaintiffs brought the elder abuse claim only on behalf of Larry and Joan Grill.

Second, Plaintiffs' claim also fails because they must allege that Defendant obtained or retained their property. *See Das*, 186 Cal. App. 4th at 744, 112 Cal. Rptr. 3d at 453 (2010).[5] California Welfare and Institutions Code Section 15657.6 requires "[a] person or entity that takes, secretes, appropriates, obtains, or retains . . . property of an elder" to, "upon demand by the elder . . . ***return the property***[.]" Cal. Welf. & Inst. Code § 15657.6. A defendant can "return" property only if it was taken from

---

[4] An "elder" under Section 15610.30 is "any person residing in this state, 65 years of age or older." *See* Cal. Welf. & Inst. Code § 15610.27. Plaintiffs do not allege Steven Grill is 65 years or older, nor is it plausible that he was at least 65 at the time of any alleged abuse, given that his parents, Larry and Joan Grill, were 68 and 65 years old when they purchased the Policy in 2004. FAC ¶ 18.

[5] The version of Section 15610.30 applied in *Das* was effective through December 2008, and plainly governs Plaintiffs' claim concerning the first partial surrender. The section has since been amended to apply where an elder is "deprived of any property right," but Section 15657.6 was also added, requiring the "***return*** of the property" taken or retained upon the elder's demand. Because property can only be returned if obtained or retained in the first place, the amendments effective as of January 2009 do not change the substantive scope of the law. Indeed, the legislative history confirms that the amendment "***clarifies*** [the] conduct constitute[ing] financial abuse," and the "instrument of ***transfer*** [that is] subject to scrutiny." Sen. Bill No. 1140, Senate Judiciary Committee Bill Analysis (2007-2008 Reg. Sess.) (Mar. 25, 2008).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

someone else, and the financial abuse statute requires not only a deprivation of property, but also that Defendant obtain or retain that property.

Parroting the definition of financial abuse of an elder under California's Elder Abuse statute—which is insufficient under Rule 12(b)(6), *see Twombly*, 550 U.S. at 555—Plaintiffs allege that Lincoln "took, secreted, appropriated, obtained, or retained" the "over $5 million of the policy" which they surrendered. FAC ¶ 57; Cal. Welf. & Inst. Code § 15610.30(a)(1). That conclusory allegation does not support their claim. Nothing in the FAC suggests that Lincoln acquired or retained the amount surrendered; Plaintiffs merely reduced the amount of death benefit that Lincoln would ultimately pay to the Policy's beneficiary upon the deaths of both insureds.

Plaintiffs' new allegations do not save their elder abuse claim. They now allege they paid premiums "designed to cover the original specified amount" and that Lincoln "took, secreted, appropriated, obtained, or retained those premium payments" when Steven Grill partially surrendered. FAC ¶ 58. But those premiums were added to the Policy Fund Value and remain available to the Policy's owner to cover charges for maintaining the Policy. *See supra* p. 7. Thus Lincoln has not obtained or retained any premiums. Because Plaintiffs' allegations do not plausibly show that Lincoln took, secreted, appropriated, obtained, or retained any property, the financial elder abuse claim must be dismissed. *See Das*, 186 Cal. App. 4th at 744, 112 Cal. Rptr. 3d at 453 (rejecting elder abuse claim where "[n]othing in appellant's complaints suggest[ed] that respondent, in issuing a loan to [plaintiff] and transferring his funds at his request, obtained his property[.]").

## V.   PLAINTIFFS FAIL TO STATE A UCL CLAIM

Plaintiffs also fail to state a claim under California's Unfair Competition Law ("UCL") because they have not pleaded facts establishing that Lincoln did anything unlawful, fraudulent or unfair. Cal. Bus. & Prof. Code § 17200 (defining "unfair competition" to include "any unlawful, unfair or fraudulent business act or practice"); *see also Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 837, 51 Cal.

Rptr. 3d 118, 128 (2006). Plaintiffs bring a UCL claim under each of the three prongs, *see* FAC ¶¶ 70-72, but have failed to plead facts establishing any one of them.

*First*, Plaintiffs claim that Lincoln violated the UCL by engaging in unlawful conduct is premised on their elder abuse claim and falls with it. To plead a claim under the "unlawful" prong, Plaintiffs must allege that a business practice violated a predicate federal, state, or local law. *See Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180, 83 Cal. Rptr. 2d 548, 561 (1999). Plaintiffs allege that "Defendant's business practices . . . are unlawful because they constitute financial elder abuse[.]" FAC ¶ 70. But as explained above, they have not stated an elder abuse claim and therefore fail to state a UCL claim under the unlawful prong.

*Second*, Plaintiffs' UCL claim based on the "fraudulent" prong is premised on their fraudulent concealment claim and falls with it. The UCL prohibits conduct that is likely to deceive members of the public. *Prata v. Sup. Ct.*, 91 Cal. App. 4th 1128, 1136, 111 Cal. Rptr. 2d 296, 302 (2001) (citing *Chern v. Bank of Am.*, 15 Cal. 3d 866, 876, 127 Cal. Rptr. 110, 116 (1976)). A "failure to disclose a fact one has no affirmative duty to disclose" is ***not*** "'likely to deceive' anyone within the meaning of the UCL." *Daugherty*, 144 Cal. App. 4th at 838, 51 Cal. Rptr. 3d at 128; *see also Elias v. Hewlett-Packard Co.*, 12-CV-000421-LHK, 2014 WL 493034, at *9 (N.D. Cal. Feb. 5, 2014) (requiring the same elements to be pleaded for "fraud" prong claims as common law concealment claims). Lincoln had no duty to disclose life settlements options, and Plaintiffs have not alleged facts showing otherwise. Plaintiffs thus fail to state a claim under the UCL's fraud prong.

*Third*, Plaintiffs fail to state a claim under the UCL's "unfair" prong because Plaintiffs have not pleaded that Lincoln violated any public policy or that any harm to them outweighs the utility of Lincoln's alleged non-disclosure. "California appellate courts disagree on how to define an 'unfair' act or practice in the context of a UCL consumer action[,]" *Rubio v. Capital One Bank*, 613 F.3d 1195, 1204 (9th Cir. 2010);

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT

*see Davis v. Ford Motor Credit Co.*, 179 Cal. App. 4th 581, 593-95, 101 Cal. Rptr. 3d 697, 708 (2009), but Plaintiffs' claims fail under any standard.

Many courts hold that "the public policy which is a predicate to a consumer unfair competition action under the 'unfair' prong of the UCL must be tethered to specific constitutional, statutory, or regulatory provisions." *Lesley v. Ocwen Fin. Corp.*, SA CV 12-1737-DOC, 2013 WL 990668, at *6 (C.D. Cal. Mar. 13, 2013) (quoting *Lazo*, C 12-00762 LB, 2012 WL 1831577, at *11 (N.D. Cal. May 18, 2012)); *see also Cel-Tech Commc'ns, Inc.*, 20 Cal. 4th at 186-87, 83 Cal. Rptr. 3d at 565. Plaintiffs' identify *no* specific legal provisions establishing a public policy that would require an insurer's disclosure of information about life settlements. In fact, the only laws they mention that would require disclosure are ones that have failed to pass. *See* FAC ¶ 26.[6]

Some courts applying the "unfair" prong ask whether the "alleged business practice is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers and requires the court to weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim.'" *Lesley*, 2013 WL 990668, at *6 (quoting *Lazo v. Bank of Am., N.A.*, C 12-00762 LB, 2012 WL 1831577, at *11 (N.D. Cal. May 18, 2012)). But Plaintiffs fair no better here. They allege in conclusory fashion that "Defendant's business practices . . . are unfair because they offend established public policy and/or are immoral, unethical, oppressive, unscrupulous, and/or substantially injurious to consumers." FAC ¶ 71. Such threadbare allegations, devoid of any factual enhancement concerning the public policies at issue or the

---

[6] As the sources in the Complaint highlight, life settlement transactions present a number of potential risks to the policy owners. For example, they are "prime terrain for fraud[,]" *see* James Vlahos, *Are You Worth More Dead Than Alive?*, N.Y. TIMES, Aug. 10, 2012, *available at* http://www.nytimes.com/2012/08/12/magazine/are-you-worth-more-dead-than-alive.html?_r=0, and "policy owners entering into life settlement transactions may incur unexpected tax liabilities [and] may not be able to obtain additional life insurance, if needed, in the future." U.S. Gov't Accountability Office, GAO-10-775, *Life Insurance Settlements: Regulatory Inconsistencies May Pose a Number of Challenges* (2010).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

immorality of Lincoln's alleged misconduct, are insufficient to state a claim for unfair business practices under the UCL. *See Lesley*, 2013 WL 990668, at *7 (dismissing an unfair business practices claim under the second test "because [plaintiffs] [did] not allege that defendants' conduct was unethical in more than conclusory terms"); *Baba v. Hewlett-Packard Co.*, C 09-05946 RS, 2010 WL 2486353, at *8 (N.D. Cal. June 16, 2010) (dismissing claim based on vague allegation that "[defendant's] conduct offends public policy and is unethical, oppressive, unscrupulous and violates the laws stated").

And finally, other courts ask whether the injury to the consumer (a) is "substantial;" (b) outweighs any "countervailing benefits to consumers or competition;" and (c) is a type that "consumers themselves could not reasonably have avoided." *See Lesley*, 2013 WL 990668, at *6. (quoting *Camacho v. Automobile Club of S. Cal.*, 142 Cal. App. 4th 1394, 1403, 48 Cal. Rptr. 3d 770, 777 (2006)). Here too, Plaintiffs' claim fails. Plaintiffs make no allegations on which the Court could conduct the necessary balancing. And they certainly have not pleaded facts showing that consumers could not reasonably have avoided the alleged harm—for instance, by researching online where information about life settlements is readily available. *Cf.* FAC ¶ 26-27 & nn.1-3 (quoting online information about life settlements).

Thus, under any standard, Plaintiffs have failed to establish an "unfair" business practice. Even aside from the dearth of factual support for their claim, Plaintiffs' unfair business practice claim is especially ***implausible*** given that the California legislature considered ***and rejected*** an amendment to the Insurance Code that would have required life insurers to disclose that there may be alternatives to surrender. If failing to disclose that alternatives exist, as a general matter, was not unscrupulous, oppressive or harmful enough for the legislature to mandate disclosure, neither is any failure to disclose the specific alternatives available, such as life settlement options. If the legislature felt otherwise, they would have amended the Insurance Code to require such disclosures. Because they did not, any alleged failure to disclose life settlement

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

1  options cannot be an unfair business practice under the UCL. Accordingly, Plaintiffs'

2  claim under the "unfair" prong should be dismissed pursuant to Rule 12(b)(6).

3     Plaintiffs' UCL claim also fails for another independent reason: Under the

4  UCL, the only type of damages available is restitution. *In re Sony Gaming Networks*

5  *& Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 970 (S.D. Cal. 2012).

6  Restitution under the UCL is defined as the "return [of] money obtained through an

7  unfair business practice to those persons in interest from whom the property was

8  taken[.]" *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144-45, 131

9  Cal. Rptr. 2d 29, 38 (2003). To plead a claim for restitution under the UCL, Plaintiffs

10  must allege that Defendant "took money directly from them." *White v. Trans Union,*

11  *LLC*, 462 F. Supp. 2d 1079, 1083 (C.D. Cal. 2006). But here, Plaintiffs allege injury

12  from the fact that they "surrendered part of the Policy, decreasing its specified

13  amount." FAC ¶ 22.  Lincoln did not obtain any money through that surrender; rather,

14  it was simply relieved (in part) of a future obligation to pay a death benefit. Plaintiffs

15  new allegations about premium payments are similarly unavailing because "all

16  premiums received" are added to the "Policy Fund Value," and remain available to the

17  owner in the event of surrender.  *See supra* p. 7. Thus these allegations do not

18  plausibly show that Defendant took or obtained any money from Plaintiffs, and their

19  claim for restitution must be dismissed. Since Plaintiffs cannot recover restitution or

20  injunctive relief, *see* Part II *supra*—the only relief the UCL authorizes—Plaintiff's

21  UCL claim must be dismissed in its entirety.

22  **VI.    ALL OF PLAINTIFFS' CLAIMS ARE TIME-BARRED**

23     Finally, Plaintiffs' claims should be dismissed for the separate and independent

24  reason that they are all time-barred. Since the "running of the [limitations period] is

25  apparent on the face of the complaint, the defense may be raised by a motion to

26  dismiss." *Jablon v. Dean Witter & Co.*, 614 F.2d 677, 682 (9th Cir. 1980). Plaintiffs'

27  latest claim accrued in December 2009, with the second partial surrender, yet they

28  waited ***more than four years*** to file suit in January 2014. Because the longest

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO
DISMISS THE FIRST AMENDED COMPLAINT

applicable limitations period is four years, *all* of Plaintiffs' claims should be dismissed as time-barred. *See* Cal. Civ. Proc. Code § 338(d) (establishing a *three-year* limitations period for fraud claims); Cal. Welf. & Inst. Code § 15657.7 (establishing a *four-year* statute of limitations for financial elder abuse claims); Cal. Bus. & Prof. Code § 17208 (establishing a *four-year* statute of limitations for UCL claims).[7]

Each claim is premised on the allegation that Plaintiffs were harmed when, as a result of Lincoln's failure to disclose, they partially surrendered in February 2008 and December 2009. In California, "a tort cause of action accrues and the limitations period commences when the injury occurs[,]" *Shively v. Bozanich*, 31 Cal. 4th 1230, 1237, 7 Cal. Rptr. 3d 576, 579 (2003), so the latest claim accrued in December 2009, more than four years before they filed suit.  Their claims are thus time-barred.

Plaintiffs' attempt to invoke the discovery rule to toll the limitations periods is unavailing. *See* FAC ¶¶ 34-35.  Under the discovery rule, "the statute commences to run 'only after one has knowledge of facts sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry.'" *Vega v. Jones, Day, Reavis & Pogue*, 121 Cal. App. 4th 282, 298, 17 Cal. Rptr. 3d 26, 38 (2004). Plaintiffs must "specifically plead facts to show (1) the time and manner of discovery *and* (2) the inability to have made earlier discovery despite *reasonable diligence*." *Fox v. Ethicon Endo-Surgery, Inc.*, 35 Cal. 4th 797, 808, 27 Cal. Rptr. 3d 661, 664, 668 (2005). The "court places the burden on the plaintiff to 'show diligence'; 'conclusory allegations will not'" suffice. *Id.* (internal citations omitted); *see also Anderson v. Brouwer*, 99 Cal. App. 3d 176, 182, 160 Cal. Rptr. 65, 68 (1979) ("[f]ormal averments or general conclusions to the effect that the facts were not discovered until a stated date, and that plaintiff could not reasonably have made an earlier discovery, are useless").

---

[7] A "federal court sitting in diversity applies the substantive law of the state, including the state's statute of limitations," and "must abide by a state's tolling rules." *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 530 (9th Cir. 2011).

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT

Plaintiffs now allege in conclusory fashion that they "did not know, and were not reasonably able to discover, that they had the option of a life settlement with their insurance policies" because Defendant's concealment "prevented Plaintiffs from filing suit during the statute of limitations period." FAC ¶ 34. But the FAC does not allege facts showing why a diligent, reasonable investigation would not have revealed a factual basis for their claim sooner, especially in light of the Change Form and the readily available public information about life settlements.[8] The discovery rule therefore does not toll the limitations period. *See Giordano v. Wachovia Mortg., FSB*, 5:10-CV-04661-JF, 2011 WL 1130523, at *3 (N.D. Cal. Mar. 25, 2011) (holding that, where loan documents plaintiff signed disclosed that the interest rate "may change on the 15th day of February, 2006 and on the same day every month thereafter," plaintiff could not invoke the discovery rule in connection with the alleged concealment of the fact that loan interest payments would change throughout the loan period); *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1197, 151 Cal. Rptr. 3d 827, 836 (2013) (holding that "the UCL is governed by common law accrual rules to the same extent as any other statute," including the discovery rule).

## CONCLUSION

For the foregoing reasons, the FAC should be dismissed with prejudice.

DATED: April 14, 2014                    Respectfully submitted,
                                         KIRKLAND & ELLIS LLP


                                         */s/ Elizabeth L. Deeley*
                                         _____
                                         Elizabeth L. Deeley
                                         Austin L. Klar
                                         *Attorneys for Defendant,*
                                         THE LINCOLN NATIONAL LIFE
                                         INSURANCE COMPANY

---

[8]   *See* Request for Judicial Notice in Support of Defendant Lincoln National Life Insurance Company's Motion to Dismiss the First Amended Complaint, Exhibits 1-10 (identifying publically available articles discussing the life settlement option).

25

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF SERVICE**

I hereby certify that on April 14, 2014, I have electronically filed **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT LINCOLN NATIONAL LIFE INSURANCE COMPANY'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT** with the Clerk of the Court using the CM/ECF system, which will automatically send an e-mail notification of such filing to the attorneys of record who are registered CM/ECF users.

Executed April 14, 2014, at San Francisco, California.

KIRKLAND & ELLIS LLP

*/s/ Elizabeth L. Deeley*
Elizabeth L. Deeley

Attorneys for Defendant,
THE LINCOLN NATIONAL LIFE
INSURANCE COMPANY